IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------x
:
:
In re:                                          : Chapter 11
:
WINDSOR PETROLEUM TRANSPORT                     : Case No. 14–11708 (PJW)
CORPORATION, *et al.*,[1]                       :
                                                : Jointly Administered
           Debtors.                             :
                                                : Hearing Date: August 12, 2014 at 1:30 p.m. (ET)
                                                : Objection Deadline: August 5, 2014 at 4:00 p.m. (ET)
------------------------------------------------------------------x

**MOTION FOR ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE
BANKRUPTCY CODE AUTHORIZING AND APPROVING, *NUNC PRO TUNC* TO
THE PETITION DATE, THE AGREEMENT WITH AMA CAPITAL PARTNERS LLC
TO PROVIDE (I) PAUL M. LEAND, JR. TO SERVE AS THE DEBTORS' CHIEF
RESTRUCTURING OFFICER AND (II) SERVICES RELATED THERETO**

Windsor Petroleum Transport Corporation and its above-captioned affiliated debtors and debtors in possession (each, a "**Debtor**," and collectively, the "**Debtors**") hereby submit this motion (this "**Motion**") for the entry of an order, substantially in the form attached hereto as Exhibit C (the "**Proposed Order**"), pursuant to sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**"), authorizing and approving, effective as of the Petition Date (defined below), the Debtors' agreement with AMA Capital Partners LLC ("**AMA**"), a copy of which is annexed hereto as Exhibit A (the "**AMA Agreement**"), pursuant to which AMA has agreed to provide Mr. Paul M. Leand, Jr. ("**Mr. Leand**") to serve as the Debtors' Chief Restructuring Officer (the "**CRO**") and to provide additional staff during these chapter 11 cases (the "**Additional Personnel**"). In support of this

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, where applicable, are: Windsor Petroleum Transport Corporation (1381) ("**Windsor Petroleum**"), Windsor Holdings Limited, Buckingham Petro Limited, Buckingham Shipping Plc, Caernarfon Petro Limited, Caernarfon Shipping Plc, Sandringham Petro Limited, Sandringham Shipping Plc, Holyrood Petro Limited, and Holyrood Shipping Plc. The mailing address for Windsor Petroleum is c/o Frontline Ltd., PO Box HM 1593, Par-la-Ville Place, 14 Par-la-Ville Road, Hamilton HM 08, Bermuda. The mailing address for each of the other Debtors is Fort Anne, Douglas, Isle of Man, IM1 5PD, British Isles.

01:15721417.4

Motion, the Debtors submit the declaration of Mr. Leand (the "**Leand Declaration**"), attached hereto as <u>Exhibit B</u>. In further support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "**Amended Standing Order**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 105(a) and 363(b) of the Bankruptcy Code.

## BACKGROUND

2.  On July 14, 2014 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

3.  The Debtors have continued in possession of their properties and have continued to operate and maintain their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.  No request has been made for the appointment of a trustee or examiner and no official committee has been established in these chapter 11 cases.

5.  Additional information about the Debtors' business and the events leading up to the Petition Date can be found in the *Declaration of Paul M. Leand, Jr. in Support of*

*Voluntary Petitions, First Day Motions and Applications* [Docket No. 2] (the "**First Day Declaration**"),[2] which is incorporated herein by reference.

## RELIEF REQUESTED

6. By this Motion, the Debtors request the Court to enter the Proposed Order, authorizing and approving, effective as of the Petition Date, the AMA Agreement, pursuant to which Mr. Leand will serve as the CRO and any necessary Additional Personnel will be provided by AMA to perform the services contemplated by the AMA Agreement.

## QUALIFICATIONS

7. AMA has provided strategic and M&A advisory services to parties in the transportation section for two decades and has earned a reputation as the pre-eminent maritime restructuring advisor for both creditors and companies alike. Mr. Leand, who holds a BS/BA from Boston University's School of Management, has been with AMA since 1998 and was appointed the Chief Executive Officer of AMA in 2004. Mr. Leand and AMA have been involved in the restructuring of numerous high yield issues, including Golden Ocean, ACL, Pegasus Enterprises, and Horizon Lines. In addition, on the offshore side, Mr. Leand has led AMA's efforts in the restructurings of, among others, PetroMENA ASA, Sevan Marine ASA, Remedial Offshore and Equinox Offshore. Mr. Leand also serves as a Director of Golar LNG Partners LP (Nasdaq), Lloyd Fonds AG (Frankfurt Stock Exchange), North Atlantic Drilling (Oslo Stock Exchange), SeaDrill Ltd. (NYSE), Ship Finance International Ltd. (NYSE), as well as privately held Helm International.

8. Mr. Leand and the Additional Personnel have served as restructuring advisors to the Debtors since September 2013 and, as a result, have become intimately familiar

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

01:15721417.4

with the Debtors, their business operations, their financial conditions and various other matters that may be relevant to the chapter 11 cases. Mr. Leand and AMA's other professionals have worked diligently to understand the Debtors' business and carefully coordinate the necessary professional services and other vital aspects of preparing for these chapter 11 cases and negotiating and executing the Restructuring Support Agreement.

9. The Debtors selected AMA to provide Mr. Leand and the Additional Personnel to perform the necessary services contemplated by the AMA Agreement because of AMA's extensive experience and knowledge of the Debtors' business operations and financial affairs and AMA's restructuring experience in connection with the industry within which the Debtors operate. Accordingly, the Debtors believe that AMA is well qualified to assist them in these chapter 11 cases and submit that the Debtors' employment of the CRO and the Additional Personnel should be approved. In light of AMA's expertise, background and prior experience with the Debtors, finding a different chief restructuring officer (and the necessary additional personnel) at this critical time of these chapter 11 cases would be highly detrimental to the Debtors, the success of these cases, and the Debtors' efforts to comply with the various milestones set forth in the Restructuring Support Agreement, including to file a plan (implementing the terms and conditions of the Restructuring Term Sheet) and a related disclosure statement within 30 business days of the Petition Date.

**SCOPE OF SERVICES**[3]

10. AMA has, subject to the Court's approval, assigned Mr. Leand to serve as the Debtors' CRO, and has assigned the Additional Personnel to perform other necessary

---

[3] The summary of the AMA Agreement herein is qualified in its entirety by the actual terms of the AMA Agreement. If there are any inconsistencies between the summary contained herein and the actual terms of the AMA Agreement, the actual terms of the AMA Agreement shall control. Unless otherwise defined herein, all capitalized terms used in connection with this summary shall have the meanings ascribed to them in the AMA Agreement.

01:15721417.4

services set forth in the AMA Agreement.  Mr. Leand will have the powers and responsibilities necessary to perform the various duties required of the Debtors' CRO, as set forth in the AMA Agreement, including coordinating the efforts of the Debtors in these chapter 11 cases, and identifying, developing and implementing key strategies related to the Debtors' business plan and other related matters (including the Restructuring Term Sheet and the chapter 11 plan and disclosure statement contemplated thereby).

11. Pursuant to the AMA Agreement, the CRO and the Additional Personnel will provide the following services, among others, to the Debtors (collectively, the "**Services**"):

- Provide oversight and support to the Debtors' other professionals in connection with the restructuring efforts;

- Provide oversight and assistance with the preparation of all necessary cash flow forecasts and evaluate short-term liquidity requirements of the Debtors, to the extent consistent with the Debtors' fiduciary obligations to maximize value for the Debtors' stakeholders;

- As necessary, provide oversight and assistance with the preparation of financial-related disclosures required by the Court, including the Schedules of Assets and Liabilities, the Statements of Financial Affairs and Monthly Operating Reports, and attend any meeting of creditors convened by the Office of the United States Trustee (the "**U.S. Trustee**") on behalf of the Debtors;

- As necessary, provide oversight and assistance with the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursements analysis of various asset and liability accounts, and analysis of proposed transactions for which Court approval is sought;

- Participate in meetings and provide assistance to potential investors, potential lenders, any official committee(s) appointed in the case, the U.S. Trustee, other parties in interest and professionals hired by the same, as requested;

- Evaluate and make recommendations in connection with strategic alternatives as needed to maximize the value of the Debtors, to the extent consistent with the Debtors' fiduciary obligations to maximize value for the Debtors' stakeholders;

- Provide oversight and assistance with the preparation of analysis of creditor claims by type, entity, and/or individual claim, including assistance with the development of databases, as necessary, to track such claims;

- Provide oversight and assistance with the evaluation and analysis of avoidance actions, including fraudulent conveyances and preferential transfers, if necessary;

- Provide testimony in litigation/bankruptcy matters as needed;

- Evaluate the cash flow generation capabilities of the Debtors for valuation maximization opportunities;

- Provide oversight and assistance in connection with communications and negotiations with constituents, including trade vendors, investors and other critical constituents to the successful execution of the Debtors' near-term business plan;

- Assist in implementing and obtaining approval of a plan of reorganization (the "**Plan**") consistent with the Restructuring Support Agreement and the related term sheet negotiated by the Debtors, as consistent with the Debtors' fiduciary obligations to maximize value for the Debtors' stakeholders, and in the preparation of information and analysis necessary for the confirmation of the Plan; and

- Perform other tasks as agreed to among AMA, the Debtors and/or counsel to the Debtors.

## COMPENSATION

12. Pursuant to the terms and conditions contained in the AMA Agreement, the Debtors have agreed to pay a fixed fee of $1,500,000 to AMA, payable upon the effective date of the Plan, in consideration of the services to be performed by AMA, including the services of the CRO in the chapter 11 cases. AMA will also be entitled to reimbursement of reasonable expenses incurred in connection with this engagement, including, but not limited to, transportation of any AMA personnel, employees, associates or contractors on business related to the engagement; cost of hotels, meals, and similar items; and other costs incurred in providing the Services.

13.     AMA has not received any payments from the Debtors in the ninety (90) days prior to the Petition Date.

14.     To the best of the Debtors' knowledge, the compensation arrangement provided in the AMA Agreement, and described herein, is consistent with, and typical of, arrangements entered into by AMA and other firms rendering similar services to clients such as the Debtors.  To the best of the Debtors' knowledge, there is no agreement or understanding between AMA and any nonaffiliated person or entity for sharing compensation received, or to be received, for services rendered by AMA personnel in connection with these chapter 11 cases.

## REPORTING REQUIREMENTS

15.     If the Court grants the relief requested herein, AMA will be employed in these chapter 11 cases pursuant to section 363 of the Bankruptcy Code.  Because AMA is not being retained pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, AMA does not intend to apply to the Court for allowances of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules for the United States Bankruptcy Court of the District of Delaware (the "**Local Rules**"), orders of the Court, and guidelines established by the U.S. Trustee.  Instead, the fees and expenses incurred by AMA in completing the Services will be treated as administrative expenses of the Debtors' chapter 11 estates and paid by the Debtors in the ordinary course of business.

16.     However, to maintain transparency and to comply with the U.S. Trustee's protocol applicable to the retention of personnel under section 363 of the Bankruptcy Code (sometimes referred to as the "J. Alix Protocol"), until the effective date of any chapter 11 plan confirmed in these cases, AMA will file reports of compensation earned and expenses incurred

01:15721417.4

and paid on a quarterly basis (each a "**Quarterly Report**," and collectively, the "**Quarterly Reports**") with the Court and provide notice to the U.S. Trustee, counsel to any statutorily appointed committee (the "**Committee**") and counsel to the Supporting Noteholders (together with the U.S. Trustee and the Committee, the "**Notice Parties**").  Such reports will: (a) summarize the services provided to the Debtors; (b) identify the staff employees provided; and (c) itemize the expenses incurred.  Notice for the Quarterly Reports will provide for a time period of at least fourteen (14) days for objections by parties in interest.  All compensation will be subject to review by the Court in the event an objection is filed.  For the avoidance of doubt, Mr. Leand and the Additional Personnel will not be required to submit time entries in tenth of an hour increments, as required by Local Rule 2016-2(d)(iv), but rather in one hour increments.

17.    Quarterly Reports shall be due no later than twenty (20) days after the end of a quarter, with the first Quarterly Report, covering the period from the Petition Date through September 30, 2014, due on or before October 20, 2014.  This procedure shall continue for any subsequent Quarterly Reports, until the effective date of any chapter 11 plan confirmed in these cases.  In the event that a party in interest objects to a Quarterly Report, AMA's expenses shall be subject to review by the Court.

18.    In addition, until the effective date of any chapter 11 plan confirmed in these cases, AMA will file with the Court and provide the Notice Parties a report on staffing (the "**Monthly Staffing Report**") by the 20th of each month for the previous month.  These Monthly Staffing Reports will include the names and tasks filled by all Additional Personnel involved in this matter.  Notice for the Monthly Staffing Reports will provide for a time period of at least fourteen (14) days for objections by parties in interest.  The Monthly Staffing Report (and

AMA's staffing for this matter) would be subject to review by the Court in the event timely requested by any of the Notice Parties.

## INDEMNIFICATION

19. The AMA Agreement provides that the CRO will receive the benefit of the most favorable indemnification and exculpation provisions provided by the Debtors to their directors, officers and similar employees pursuant to the applicable certificates of incorporation, bylaws, operating agreements, and other governance documents of each of the Debtors, as well as applicable state law and all insurance coverage under the Debtors' insurance policies.

## BASIS FOR RELIEF[4]

20. Section 363(b) of the Bankruptcy Code provides in pertinent part: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Courts interpreting section 363(b) have held that transactions should be approved pursuant to this provision when, as here, they are supported by management's sound business judgment. See In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991) (outlining requirements for sale of assets pursuant to section 363); In re Phoenix Steel Corp., 82 B.R. 334, 336-36 (Bankr. D. Del. 1987).

21. The proposed use, sale, or lease of property of the estate may be approved under section 363(b) of the Bankruptcy Code if it is supported by sound business justification. See In re Montgomery Ward, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions"). Although established in

---

[4] Pursuant to section 363(c) of the Bankruptcy Code, entering into contractual arrangements for the provision of interim crisis management is within the ordinary course of Debtors' business as contemplated by the Bankruptcy Code. Corporations routinely employ and terminate senior executives. Notwithstanding this contention, the Debtors have filed this Motion in the interest of full disclosure to the Court and stakeholders.

the context of a proposed sale, the "business judgment" standard has been applied in non-sale situations. See, e.g., Institutional Creditors of Continental Air Lines v. Continental Air Lines (In re Continental Air Lines), 780 F.2d 1223, 1226 (5th Cir. 1986) (court applied "business judgment" standard in context of proposed "use" of estate property). Moreover, pursuant to section 105 of the Bankruptcy Code, a court has expansive equitable powers to fashion any order or decree which is in the interest of preserving or protecting the value of a debtor's assets. See, e.g., In re Chinichian, 784 F.2d 1440, 1443 (9th Cir. 1986).

22. Once a debtor articulates a valid business justification, the "business judgment" standard "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action was in the best interests of the company." In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)). The business judgment rule has vitality in chapter 11 cases and shields a debtor's management from judicial second-guessing. See In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)); In re Johns-Manville Corp., 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("The Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions.").

23. The Debtors believe that it is necessary and in the best interest of their estates to employ Mr. Leand and the Addition Personnel during these chapter 11 cases. As previously noted, AMA has served as restructuring advisors to the Debtors since September 2013 and, as a result, has developed a significant amount of institutional knowledge regarding the Debtors' business operations and their financial affairs. Furthermore, AMA has a substantial

amount of experience with restructuring and other engagements in the shipping industry. Their continued involvement will be critically important to continuing the Debtors' operations and successfully consummating the restructuring contemplated by the Restructuring Support Agreement.

24. Additionally, the Debtors will be required to complete various administrative tasks in connection with the administration of these chapter 11 cases. These tasks include, without limitation, preparing the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs, meeting various reporting obligations of the U.S. Trustee, and responding to various document and due diligence requests that may arise in the course of these cases. Employing Mr. Leand and AMA will assist the Debtors in at least two ways. First, the Debtors and their counsel will have access to individuals with a working knowledge of the chapter 11 process that can facilitate efficient compliance and completion of these bankruptcy-specific tasks. In addition, as set forth more fully in the First Day Declaration and the Debtors' Motion for an Order, Pursuant to Sections 105(a), 363(b), 503(b), 1107(a) and 1108 of the Bankruptcy Code, (I) Authorizing the Debtors to Pay Certain Prepetition Obligations of Certain Critical and Foreign Vendors and Service Providers and (II) Authorizing Banks to Honor and Process Related Checks and Electronic Transfers [Docket No. 5], as is fairly typical in the shipping industry, the Debtors have no employees. Instead, the Debtors rely exclusively upon certain third-party managers, including on their commercial manager, Frontline Ltd. ("**Frontline**"), to provide various operational and administrative services and, in effect, handle the Debtors' day-to-day business operations. The availability of Mr. Leand and the Additional Personnel will alleviate the additional administrative burdens chapter 11 will place on the

01:15721417.4

Debtors and Frontline and allow the Debtors to preserve their going-concern operations and successfully implement the restructuring contemplated by the Restructuring Support Agreement.

25.  Courts routinely recognize the applicability of section 363(b) of the Bankruptcy Code to the use of estate property to compensate individuals employed outside the ordinary course of business.  See, e.g., In re Landauer Healthcare Holdings, Inc., Case No. 13-12098 (CSS) (Bankr. D. Del. Sept. 12, 2013) (approving an engagement agreement with Carl Marks Advisory Group LLC to provide the debtors with a chief restructuring officer and additional personnel).  To the extent such approval is required here, it should be granted for the reasons set forth above.

## NOTICE

26.  Notice of this Motion will be provided to:  (i) the U.S. Trustee; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Debtors' largest unsecured creditors; (iv) counsel to the Indenture Trustee; (v) counsel to the Supporting Noteholders; and (vi) all parties that have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.  The Debtors respectfully submit that no further notice of this Motion is required.

## NO PRIOR REQUEST

27.  The Debtors have not previously sought the relief requested herein from this or any other Court.

## CONCLUSION

WHEREFORE, the Debtors request entry of the Proposed Order, granting the relief requested herein and such other and further relief as is just and proper.

01:15721417.4

|  |  |
|---|---|
| Dated: July 22, 2014<br>Wilmington, Delaware | YOUNG CONAWAY STARGATT & TAYLOR, LLP<br><br>*/s/ Ashley E. Markow*<br>Pauline K. Morgan (No. 3650)<br>Sean T. Greecher (No. 4484)<br>Robert F. Poppiti, Jr. (No. 5052)<br>Andrew L. Magaziner (No. 5426)<br>Ashley E. Markow (No. 5635)<br>Rodney Square<br>1000 N. King Street<br>Wilmington, Delaware 19801<br>Telephone:  (302) 571-6600<br>Facsimile:  (302) 571-1253<br><br>*Proposed Counsel for the Debtors*<br>*and Debtors in Possession* |