## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------------x
                                               :

| | |
|---|---|
| **In re:** | **Chapter 11** |
| | |
| **WINDSOR PETROLEUM TRANSPORT** | **Case No. 14–11708 (PJW)** |
| **CORPORATION, *et al.*,**[1] | |
| | **(Jointly Administered)** |
| **Debtors.** | |

-----------------------------------------------------------------x

---

### AMENDED PLAN OF REORGANIZATION OF THE DEBTORS
### PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

---

Dated:  Wilmington, Delaware
       October 8, 2014

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Pauline K. Morgan (No. 3650)
Sean T. Greecher (No. 4484)
Robert F. Poppiti, Jr. (No. 5052)
Andrew L. Magaziner (No. 5426)
Ashley E. Markow (No. 5635)
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, where applicable, are:  Windsor Petroleum Transport Corporation (1381),Windsor Holdings Limited, Buckingham Petro Limited, Buckingham Shipping Plc, Caernarfon Petro Limited, Caernarfon Shipping Plc, Sandringham Petro Limited, Sandringham Shipping Plc, Holyrood Petro Limited, and Holyrood Shipping Plc. The mailing address for Windsor Petroleum is c/o Frontline Ltd., PO Box HM 1593, Par-la-Ville Place, 14 Par-la-Ville Road, Hamilton HM 08, Bermuda.  The mailing address for each of the other Debtors is Fort Anne, Douglas, Isle of Man, IM1 5PD, British Isles.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................... 1

ARTICLE I. DEFINITIONS AND CONSTRUCTION OF TERMS ........................................... 1
    A.    Definitions. ................................................................................................... 1
    B.    Interpretation, Application of Definitions and Rules of Construction................. 9
    C.    Computation of Time....................................................................................... 9
    D.    Reference to Monetary Figures........................................................................ 10

ARTICLE II. ADMINISTRATIVE AND PRIORITY CLAIMS............................................. 10
    A.    Administrative Expense Claims........................................................................ 10
    B.    Fee Claims. ................................................................................................... 11
    C.    Priority Tax Claims......................................................................................... 11
    D.    U.S. Trustee Fees. .......................................................................................... 12

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY
         INTERESTS ......................................................................................... 12
    A.    Classification of Claims and Equity Interests................................................... 12
    B.    Distributions of Common Units to Holders of Class 3 Claims..................... 12
    C.    Summary of Classification and Class Identification......................................... 12
    D.    Treatment of Classified Claims and Equity Interests. ...................................... 13
    E.    Special Provision Regarding Unimpaired and Reinstated Claims..................... 16

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN........................................ 16
    A.    General Settlement of Claims and Interests...................................................... 16
    B.    Voting of Claims. ........................................................................................... 16
    C.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code................. 17
    D.    Limited Liability Company. ............................................................................ 17
    E.    Continued Corporate Existence and Vesting of Assets. ................................... 17
    F.    Issuance of Common Units of New Holdco. .................................................... 18
    G.    Restructuring Support Agreement Professional Fees. ...................................... 18
    H.    Secured Notes Indenture Trustee Fees and Expenses....................................... 19
    I.    Cancellation of Existing Securities.................................................................. 20
    J.    Preservation of Causes of Action.................................................................... 20

ARTICLE V. PROVISIONS REGARDING CORPORATE GOVERNANCE  OF THE
         REORGANIZED DEBTOR ................................................................... 21
    A.    Appointment of Managers. ............................................................................. 21
    B.    Powers of Officers. ........................................................................................ 21
    C.    Corporate Action............................................................................................ 21

ARTICLE VI. DISTRIBUTIONS UNDER THE PLAN ...................................................... 22
    A.    Procedures for Treating Disputed Claims........................................................ 22
    B.    Allowed Claims. ............................................................................................ 23
    C.    Allocation of Consideration............................................................................ 24

D.      Insured Claims. ................................................................................................ 24
E.      Compliance with Tax Requirements .............................................................. 24
F.      Setoff and Recoupment ................................................................................... 24

ARTICLE VII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES .......................... 25
A.      Assumption of Executory Contracts and Unexpired Leases. ........................ 25
B.      Cure Claims. ................................................................................................... 25
C.      Reservation of Rights...................................................................................... 26
D.      Rejection of Executory Contracts and Unexpired Leases. ............................ 26
E.      Assignment. .................................................................................................... 27
F.      Insurance Policies. .......................................................................................... 27
G.      Post-Petition Contracts and Leases. ............................................................... 27

ARTICLE VIII. CONFIRMATION AND CONSUMMATION OF THE PLAN ...................... 27
A.      Conditions to Confirmation. ........................................................................... 27
B.      Conditions to Effectiveness. ........................................................................... 28
C.      Waiver of Conditions. ..................................................................................... 29
D.      Effect of Failure of Conditions. ..................................................................... 29
E.      Vacatur of Confirmation Order. ..................................................................... 29
F.      Modification of the Plan. ................................................................................ 29
G.      Revocation, Withdrawal, or Non-Consummation. ......................................... 29

ARTICLE IX. EFFECT OF CONFIRMATION AND INDEMNIFICATION, RELEASE,
                INJUNCTIVE AND RELATED PROVISIONS ............................................. 30
A.      Binding Effect. ................................................................................................ 30
B.      Discharge of the Debtors. ............................................................................... 30
C.      Injunction. ....................................................................................................... 31
D.      Releases, Exculpations and Injunctions of Released Parties. ........................ 31
E.      Votes Solicited in Good Faith. ....................................................................... 33
F.      Preservation of Insurance. .............................................................................. 33

ARTICLE X. RETENTION OF JURISDICTION ..................................................................... 33

ARTICLE XI. MISCELLANEOUS PROVISIONS ................................................................... 35
A.      Immediate Binding Effect. .............................................................................. 35
B.      Governing Law. ............................................................................................... 35
C.      Filing or Execution of Additional Documents. .............................................. 35
D.      Term of Injunctions of Stays. ......................................................................... 35
E.      Withholding and Reporting Requirements. .................................................... 35
F.      Exemption From Transfer Taxes. ................................................................... 36
G.      Plan Supplement. ............................................................................................ 36
H.      Payment of Statutory Fees. ............................................................................. 36
I.       Amendment  or Modification of this Plan. ..................................................... 36
J.       Severability of Plan Provisions. ..................................................................... 36
K.      Successors and Assigns. .................................................................................. 37
L.      Notices. ........................................................................................................... 37
M.      Conflicts. ......................................................................................................... 37

## INTRODUCTION

The Debtors propose the following plan of reorganization under section 1121(a) of chapter 11 of title 11 of the United States Code.  Capitalized terms used in the Plan and not otherwise defined shall have the meaning ascribed to such terms in Article I.

Claims against, and Equity Interests in, the Debtors will be treated as set forth herein.  Reference is made to the Disclosure Statement accompanying the Plan, including the exhibits thereto, for a discussion of the Debtors' history, business, results of operations, and projections for future operations and risk factors, together with a summary and analysis of the Plan.

Parties are encouraged to read the Plan and the Disclosure Statement and their respective exhibits and schedules in their entirety before voting to accept or reject the Plan.  No materials other than the Disclosure Statement and the respective schedules and exhibits attached thereto and referenced therein have been authorized by the Court for use in soliciting acceptances or rejections of the Plan.

## ARTICLE I.
## DEFINITIONS AND CONSTRUCTION OF TERMS

**A.**      **Definitions.**

Unless otherwise defined herein the following terms shall have the respective meanings set forth below.  Any term that is used and not otherwise defined herein, but that is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to it in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.      *Administrative Expense Claim*:  means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases of a kind specified under section 503(b) of the Bankruptcy Code and entitled to priority under sections 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including (i) any actual and necessary costs and expenses of preserving the Estate, (ii) any actual and necessary costs and expenses of operating the Debtors' businesses, (iii) any indebtedness or obligations assumed by the Debtors in connection with the conduct of their businesses during the Chapter 11 Cases, (iv) any fees or charges assessed against the Estates under section 1930 of title 28 of the United States Code, (v) any Claim for goods delivered to the Debtors within twenty (20) days of the Petition Date and entitled to administrative priority pursuant to section 503(b)(9) of the Bankruptcy Code.

2.      *Allowed*:  means, with reference to any Claim or Equity Interest, (i) any Claim or Equity Interest as to which no objection, action to reclassify, subordinate or otherwise limit recovery with respect thereto or request for estimation has been Filed on or before the Effective Date or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder of such claim, (ii) any Claim as to which the liability of the Debtors or Reorganized Debtors and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than

the Court; (iii) a Claim as to which the Debtors and Supporting Noteholders or the Reorganized Debtors agree to the amount and/or priority thereof in writing, or (iv) a Claim or Equity Interest that is expressly Allowed pursuant to the terms of this Plan. If a Claim is Allowed only in part, any provisions hereunder with respect to Allowed Claims are applicable solely to the Allowed portion of such Claim.

3. _Amended Management Agreement_: means the amended management agreements by and between Frontline Ltd., as successor manager to Cambridge Fund Management L.L.C., and each of Buckingham Shipping Plc, Caernarfon Shipping Plc, Sandringham Shipping Plc, and Holyrood Shipping Plc.

4. _Ballots_: means each of the ballots distributed with the Disclosure Statement to each holder of an Impaired Claim that is entitled to vote to accept or reject the Plan.

5. _Bankruptcy Code_: means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect with respect to the Chapter 11 Cases.

6. _Bankruptcy Rules_: means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, and local rules of the Court, as the context may require, as in effect with respect to the Chapter 11 Cases.

7. _Business Day_: means any day on which commercial banks are open for business, and not authorized to close, in New York, New York, except any day designated as a legal holiday by Bankruptcy Rule 9006(a).

8. _Cash_: means cash and cash equivalents, including, but not limited to, bank deposits, wire funds, checks and legal tender of the United States of America or equivalents thereof.

9. _Causes of Action_: means, without limitation, any and all claims, causes of actions, cross-claims, counterclaims, third-party claims, indemnity claims, contribution claims, defenses, demands, rights, actions, debts, damages, judgments, remedies, Liens, indemnities, guaranties, suits, obligations, liabilities, accounts, offsets, recoupments, powers, privileges, licenses, and franchises of any kind or character whatsoever, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, whether arising before, on or after the Petition Date, including through the Effective Date, in contract or in tort, in law or in equity, and/or pursuant to any other theory of law. For the avoidance of doubt, the term "Causes of Action" shall include: (i) all rights of setoff, counterclaim or recoupment and claims on contracts or for breaches of duties imposed by law or in equity; (ii) the right to object to Claims and Administrative Expense Claims; (iii) all claims pursuant to sections 362, 510, 542, 543, 544 through 550, 552 or 553 of the Bankruptcy Code; (iv) such claims and defenses such as fraud, mistake, duress, and/or usury and/or any other defenses set forth in section 558 of the Bankruptcy Code; or (v) any state law fraudulent transfer claims.

10. _Chapter 11 Cases_: means the chapter 11 cases commenced by the Debtors.

11.     _Claim_:   means a "claim" against a Debtor, as such term is defined in section 101(5) of the Bankruptcy Code.

12.     _Claims and Voting Agent_:   means Prime Clerk LLC.

13.     _Class_:   means a group of Claims or Equity Interests classified under the Plan.

14.     _Collateral_:   means any property or interest in property of an Estate subject to a Lien to secure the payment or performance of an Allowed Claim, which Lien has not been avoided or is not subject to avoidance under the Bankruptcy Code or is otherwise invalid under the Bankruptcy Code or applicable law.

15.     _Common Units_:   means a limited liability company membership interest in New Holdco having the powers, preferences, priorities and rights and qualifications, limitations and restrictions as set forth in the Operating Agreement.

16.     _Confirmation_:   means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

17.     _Confirmation Date_:   means the date of Confirmation.

18.     _Confirmation Hearing_:   means the confirmation hearing held by the Court pursuant to Bankruptcy Rule 3020(b)(2) and section 1128 of the Bankruptcy Code, including any adjournments thereof, at which the Court will consider confirmation of the Plan.

19.     _Confirmation Order_:   means the order entered by the Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Debtors and the Supporting Noteholders.

20.     _Court_:   means (i) the United States Bankruptcy Court for the District of Delaware, (ii) to the extent there is no reference pursuant to section 157 of title 28 of the United States Code, the United States District Court for the District of Delaware and (iii) any other court having jurisdiction over the Chapter 11 Cases or proceedings arising therein.

21.     _Cure Claim_:   means a claim in an amount equal to all unpaid monetary obligations under an Executory Contract or Unexpired Lease assumed by the Debtors pursuant to section 365 of the Bankruptcy Code, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.   Any Cure Claim to which the holder thereof disagrees with the priority and/or amount thereof as determined by the Debtors shall be deemed a Disputed Claim under this Plan.

22.     _Debtor_:   means one or more of the Debtors, as debtors and debtors in possession, each in its respective individual capacity as a debtor and debtor in possession in the Chapter 11 Cases.

23.     _Debtors_:   means collectively, Windsor Holdings Limited, Windsor Petroleum Transport Corporation, Buckingham Shipping Plc, Caernarfon Shipping Plc,

Sandringham Shipping Plc, Holyrood Shipping Plc, Buckingham Petro Limited, Caernarfon Petro Limited, Sandringham Petro Limited, and Holyrood Petro Limited.

24.    *Disclosure Statement*:  means the *Disclosure Statement for the Plan of Reorganization of the Debtors Under Chapter 11 of the Bankruptcy Code*, in furtherance of this Plan, as amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references there that relate to the Plan, and that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules and any other applicable law..

25.    *Disputed*:  means, with reference to any Claim, any Claim that is not yet an Allowed Claim.

26.    *DTC*:  means the Depository Trust Company.

27.    *Effective Date*:  means the date which is the first Business Day selected by the Debtors, on which (a) all of the conditions to the occurrence of the Effective Date specified in Article VIII have been satisfied or waived in accordance with this Plan and (b) no stay of the Confirmation Order is in effect, provided that if the first Business Day is a designated legal holiday in the United States or the United Kingdom, then the Effective Date will be the next Business Day in the United States or the United Kingdom.

28.    *Entity*:  means an "entity" as such term is defined in section 101(15) of the Bankruptcy Code.

29.    *Equity Interest*:  means any "equity security" in a Debtor as such term is defined in section 101(16) of the Bankruptcy Code, including any issues, unissued, authorized or outstanding shares of capital stock in any Debtor together with any warrants, options or contractual to purchase or acquire such Equity Interest at any time and all rights arising with respect thereto or any other instrument evidencing an ownership interest in the Debtors, whether or not transferable.

30.    *Estates*:  means the estates of the Debtors created in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

31.    *Exchange Act*:  means the Securities Exchange Act of 1934, as amended.

32.    *Executory Contract*:  means a contract to which one or more Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

33.    *Fee Claim*:  means any request for allowance and payment of claims for Professional Fees.

34.    *Final Order*:  means an order or judgment of the Court which has not been modified, amended, reversed, vacated, or stayed, and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or motion for new trial, stay, reargument, or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, stay, reargument, or rehearing thereof has been sought, such order or judgment of the Court shall have been affirmed by the highest

court to which such order was appealed, or certiorari shall have been denied, or a new trial, stay, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing shall have expired, as a result of which such order shall have become final in accordance with Bankruptcy Rule 8002; provided, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause an order not to be a Final Order.

35.     *General Unsecured Claim*:  means any Unsecured Claim that is not an Intercompany Claim.

36.     *Governmental Unit*:  has the meaning set forth in section 101(27) of the Bankruptcy Code.

37.     *Impaired*:  means, when used with reference to Claims or Equity Interests, Claims or Equity Interests that are "impaired" within the meaning of section 1124 of the Bankruptcy Code.

38.     *Indenture Trustee Fee Claims*: means the claims of the Secured Notes Indenture Trustee for compensation and reimbursement of expenses pursuant to the terms of the Indentures and/or documents ancillary thereto.

39.     *Insured Claim*:  means any Claim or portion of a Claim that is or may be insured under any insurance policies issued for the benefit of the Debtors.

40.     *Intercompany Claim*:  means any Claim held by a Debtor against another Debtor.

41.     *Lien*:  has the meaning set forth in section 101(37) of the Bankruptcy Code.

42.     *New Board*:  means the board of managers of Reorganized Windsor to be constituted as of the Effective Date pursuant to Article V.A.

43.     *New Holdco:* has the meaning set forth in Article IV.D.

44.     *Note Obligor Debtors*:  means, collectively, Windsor Petroleum Transport Corporation, Buckingham Shipping Plc, Caernarfon Shipping Plc, Sandringham Shipping Plc, and Holyrood Shipping Plc.

45.     *Operating Agreement:*  means the limited liability company agreement with respect to Reorganized Windsor in form and substance as that attached to the Plan Supplement, which has been approved in writing by the Supporting Noteholders.

46.     *Other Priority Claim*:  means a Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than (i) an Administrative Expense Claim or (ii) a Priority Tax Claim.

47.    *Other Secured Claim*:    means any Claim that is Secured, other than a Secured Noteholder Claim.

48.    *Person*:    means any individual, corporation, partnership, limited liability company, association, indenture trustee, organization, joint stock company, joint venture, estate, trust, Governmental Unit or any political subdivision thereof, or any other entity or organization.

49.    *Petition Date*:    means the date on which each of the Debtors commenced the Chapter 11 Cases.

50.    *Plan*:    means this *Amended Plan of Reorganization of the Debtors Under Chapter 11 of the Bankruptcy Code*, together with all addenda, exhibits, schedules or other attachments, if any, including the Plan Supplement, each of which is incorporated herein by reference, and as may be amended, modified, or supplemented from time to time in accordance with the terms herein and in the Restructuring Support Agreement, as applicable.

51.    *Plan Supplement*:    means the compilation of documents and forms of documents, schedules and exhibits to the Plan to be filed with the Court on notice to parties-in-interest, including the following:  (i) the Rejection Schedule, (ii) the Operating Agreement, and (iii) the identity of the officers and members of the New Board of Reorganized Windsor.  The Debtors shall file substantially complete versions of the materials comprising the Plan Supplement no later than five (5) Business Days before the deadline to object to the confirmation of the Plan.  All Plan Supplement documents shall be in form and substance acceptable to Debtors and the Supporting Noteholders.

52.    *Priority Tax Claim*:  means any Claim that is entitled to a priority in right of payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

53.    *Professional*:    means any professional employed or retained in the Chapter 11 Cases pursuant to sections 327, 328, 330, or 1103 of the Bankruptcy Code.

54.    *Professional Fees:*  means fees and expenses for legal, financial advisory, accounting and other services and reimbursement of expenses related thereto that are awardable and allowable under sections 328, 330(a), 331, 503(b) or 1103(a) of the Bankruptcy Code or otherwise and that are rendered (a) prior to the Effective Date, or (b) thereafter in connection with applications filed pursuant to section 330, 331, 503(b) or 1103(a) of the Bankruptcy Code.  To the extent that the Court or any higher court denies by a Final Order any amount of a Professional's fees or expenses, then those amounts shall no longer be Professional Fees.

55.    *Proof of Claim*:  means a written proof of Claim filed in the Chapter 11 Cases.

56.    *Pro Rata*:  means, with respect to any Claim, the proportion that the amount of such Claim bears to the aggregate amount of all Claims (including Disputed Claims) in the applicable Class or group of Classes, unless the Plan provides otherwise, provided, for the avoidance of doubt, that each Creditor that holds an Allowed Claim against multiple Debtors arising out of the same liability shall be entitled to a single recovery under the Plan on account of such collective Allowed Claims.

57.    *Reinstated*:  means, with respect to a Claim, (a) in accordance with section 1124(1) of the Bankruptcy Code, being treated such that the legal, equitable, and contractual rights to which such Claim entitles its holder are left unaltered, or (b) if applicable under section 1124 of the Bankruptcy Code:  (i) having all prepetition and postpetition defaults with respect thereto other than defaults relating to the insolvency or financial condition of the Debtors or their status as debtors under the Bankruptcy Code cured, (ii) having its maturity date reinstated, (iii) compensating the holder of such Claim for damages incurred as a result of its reasonable reliance on a provision allowing the Claim's acceleration, and (iv) not otherwise altering the legal, equitable and contractual rights to which the Claim entitles the holder thereof.

58.    *Rejection Damage Claims*:  means Claims for damages arising from the rejection of Executory Contracts or Unexpired Leases.  All Rejection Damage Claims shall be deemed Disputed Claims upon the filing of an objection to such Claims and shall be treated as General Unsecured Claims.

59.    *Rejection Notice*:  means a notice of an Executory Contract or Unexpired Lease to be rejected under the Plan pursuant to section 365 of the Bankruptcy Code which notice shall include (i) the procedures for objection to proposed rejection of Executory Contracts and Unexpired Leases, (ii) the procedures for filing Rejection Damage Claims, and (iii) procedures for resolution by the Court of any related disputes.

60.    *Rejection Schedule*:  means the schedule of Executory Contracts and Unexpired Leases to be rejected pursuant to the Plan and the effective date of such rejection, which shall be included in the Plan Supplement.

61.    *Released Parties*:  means each of:  (a) the Debtors and Reorganized Debtors, (b) the Secured Noteholders other than those who voted to reject the Plan or have checked the box on the applicable Ballot indicating that they opt not to grant the releases provided in the Plan, (c) the Secured Notes Indenture Trustee, and (i) with respect to each of the foregoing in clauses (a) through (c), such entities' predecessors, Professionals, successors and assigns, subsidiaries, funds, portfolio companies, and each of their respective current and former officers, directors, employees, managers, attorneys, financial advisors, accountants, investment bankers, consultants, management companies or other professionals or representatives, in each case solely in their capacity as such.

62.    *Releasing Parties*:  means each of:  (a) the Secured Notes Indenture Trustee, (b) the holders of Impaired Claims other than those who voted to reject the Plan or have checked the box on the applicable Ballot indicating that they opt not to grant the releases provided in the Plan, (c) the Supporting Noteholders, and (d) with respect to the foregoing entities in clauses (a) through (c), solely to the extent such party is entitled to assert claims on behalf of the foregoing entities, such entity's current subsidiaries, officers, directors, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, equity holders, partners, and other professionals, in each case solely in their capacity as such.

63.    *Reorganized Debtor(s)*:  means any Debtor, or any successor thereto by merger, consolidation, or otherwise, on and after the Effective Date.

64. *Reorganized Windsor*:  means New Holdco or any successor thereto by merger, consolidation or otherwise, on and after the Effective Date.

65. *Restructuring Support Agreement*:  means the agreement, dated as of July 11, 2014, among the Debtors and the Supporting Noteholders, as it may be amended, modified or supplemented by the parties thereto in accordance with the terms of such agreement.

66. *Restructuring Support Agreement Professional Fees*:  means (i) the reasonable and documented fees and expenses due and owing to Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel to the Supporting Noteholders and Landis Rath & Cobb LLP, local counsel to the Supporting Noteholders, and (ii) $1,500,000 due and owing to Houlihan Lokey Capital, Inc., financial advisor to the Supporting Noteholders.

67. *Secured Noteholders*:  means the holders of Claims against any of the Debtors arising under or related to the Secured Notes Indenture.

68. *Secured Noteholder Claim*:  means any and all Claims against any of the Debtors held by Secured Noteholders arising under or related to the Secured Notes Indenture.

69. *Secured Notes Indenture*:  means that certain Indenture, dated as of November 1, 1997 (as amended, modified or supplemented from time to time), by and among Buckingham Shipping Plc, Caernarfon Shipping Plc, Sandringham Shipping Plc, Holyrood Shipping Plc, Windsor Petroleum Transport Corporation, as agent therefor and the Secured Notes Indenture Trustee, pursuant to which the Secured Notes were issued.

70. *Secured Notes Indenture Trustee*:  means The Bank of New York Mellon, as indenture trustee under the Secured Notes Indenture, or any duly appointed successor thereto.

71. *Secured Notes Indenture Trustee Charging Lien*:  means a lien that secures repayment of the Secured Notes Indenture Trustee Expenses, to the extent provided for in the Secured Notes Indenture.

72. *Secured Notes Indenture Trustee Expenses*:  means any reasonable and documented fees and out-of-pocket costs and expenses, incurred prior to or after the Petition Date by the Secured Notes Indenture Trustee that are required to be paid under the Secured Notes Indenture.

73. *Securities Act*:  means the Securities Act of 1933, as amended.

74. *Schedules*:  means the schedules of assets and liabilities, statements of financial affairs, and lists of holders of Claims and Equity Interests, filed with the Court by the Debtors, including any amendments or supplements thereto.

75. *Secured*:  means when referring to a Claim:  (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, in each case, to the extent determined pursuant

to section 506(a) of the Bankruptcy Code or (b) otherwise Allowed pursuant to the Plan as a Claim that is Secured.

76.     *Subsidiary Equity Interests:* means Equity Interests in Debtors Windsor Petroleum Transport Corporation, Buckingham Petro Limited, Buckingham Shipping Plc, Caernarfon Petro Limited, Caernarfon Shipping Plc, Sandringham Petro Limited, Sandringham Shipping Plc, Holyrood Petro Limited, and Holyrood Shipping Plc.

77.     *Supporting Noteholders*:  means the approximately 70%, measured by claim size, of the Secured Noteholders who are represented by Paul, Weiss, Rifkind, Wharton & Garrison LLP.

78.     *Unexpired Lease*:  means a lease to which any Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

79.     *Unimpaired*:  means any Class of Claims or Equity Interests that is not Impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code.

80.     *Unsecured Claim*:  means any Claim that is not Secured or entitled to priority under the Bankruptcy Code or an order of the Court, including any Claim arising from the rejection of an Executory Contract or Unexpired Lease under section 365 of the Bankruptcy Code.

81.     *U.S. Trustee*:  means the United States Trustee for the District of Delaware.

82.     *Voting Deadline*:  means the deadline for submitting Ballots to either accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, which shall be November 13, 2014 at 4:00 p.m. (prevailing Eastern Time).

83.     *Voting Record Date*:  means October 8, 2014.

**B.     Interpretation, Application of Definitions and Rules of Construction.**

Capitalized terms that are not defined herein shall have the same meanings assigned to such terms by the Bankruptcy Code or Bankruptcy Rules, as the case may be. Meanings of capitalized terms shall be equally applicable to both the singular and plural forms of such terms.  The words "herein," "hereof," and "hereunder" and other words of similar import refer to the Plan as a whole (and, for the avoidance of doubt, the Plan Supplement) and not to any particular section or subsection in the Plan unless expressly provided otherwise.  The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity and do not in any respect qualify, characterize or limit the generality of the class within which such things are included.  Captions and headings to articles, sections and exhibits are inserted for convenience of reference only, are not a part of this Plan, and shall not be used to interpret this Plan.  The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to this Plan.

**C.     Computation of Time.**

Except as otherwise specifically provided in the Plan, in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**D.    Reference to Monetary Figures.**

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

**ARTICLE II.**
**ADMINISTRATIVE AND PRIORITY CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Priority Tax Claims, and Fee Claims, as described below, have not been classified and thus are excluded from the classes of Claims and Equity Interests set forth in Article III.

**A.    Administrative Expense Claims.**

1.    *Administrative Expense Claims*.

Each holder of an Allowed Administrative Expense Claim as of the Effective Date shall receive from the applicable Debtor (i) Cash in an amount equal to the amount of such Allowed Administrative Expense Claim as soon as practicable after the later of (a) the Effective Date if such Administrative Expense Claim is Allowed as of the Effective Date, (b) thirty (30) days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim if such Administrative Expense Claim is Disputed as of or following the Effective Date, or (c) the date such Allowed Administrative Expense Claim becomes due and payable by its terms, or as soon thereafter as is practicable or (ii) such other treatment as the Debtor and such holder shall have agreed upon in writing, with the consent of the Supporting Noteholders; provided, however, that Allowed Administrative Expense Claims that arise in the ordinary course of the Debtors' business shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such transactions.

2.    *Time for Filing Administrative Expense Claims*.

The holder of an Administrative Expense Claim accruing on or after July 14, 2014, other than:  (a) a Fee Claim; (b) an Administrative Expense Claim that has been Allowed on or before the Effective Date; and (c) a claim for U.S. Trustee Fees, must submit to the Claims and Voting Agent and serve on New Holdco and its counsel, a request for such Administrative Expense Claim so as to be received by 5:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after service of notice of occurrence of the Effective Date.  Such request must include at a minimum:  (i) the name of the Debtor(s) that are purported to be liable for the Administrative Expense Claim; (ii) the name of the holder of the Administrative Expense Claim; (iii) the amount of the Administrative Expense Claim; (iv) the basis of the Administrative Expense Claim; and (v) supporting documentation for the Administrative Expense Claim.  For the avoidance of doubt, this Section of the Plan shall not be applicable to any Indenture Trustee

Fee Claims or any Restructuring Support Agreement Professional Fees, which Fee Claims shall be paid pursuant to Sections G and H of Article IV of the Plan, respectively.  **FAILURE TO FILE AND SERVE SUCH NOTICE OR REQUEST TIMELY AND PROPERLY SHALL RESULT IN THE ADMINISTRATIVE EXPENSE CLAIM BEING FOREVER BARRED AND EXTINGUISHED.**

B.      **Fee Claims.**

        1.      _Professional Compensation and Reimbursement Claims_.

        All requests for allowance of Fee Claims on a final basis must be filed with the Court and served on New Holdco and its counsel, and the U.S. Trustee, no later than forty-five (45) days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Court in the Chapter 11 Cases, the allowed amounts of such Fee Claims shall be determined by the Court.  Parties in interest will have not less than 21 days to object to any Fee Claim.  For the avoidance of doubt, this Section of the Plan shall not be applicable to any Indenture Trustee Fee Claim or any Restructuring Support Agreement Professional Fees, which Fee Claims shall be paid pursuant to Sections G and H of Article IV of the Plan, respectively.  **FAILURE TO FILE AND SERVE FINAL FEE APPLICATIONS TIMELY AND PROPERLY SHALL RESULT IN THE UNDERLYING FEE CLAIMS BEING FOREVER BARRED AND EXTINGUISHED.**

        Objections to Fee Claims, if any, must be filed and served pursuant to the procedures set forth in the Confirmation Order no later than sixty (60) days after the Effective Date or such other date as may be established by the Court.

        Upon final allowance by the Court of any Fee Claim, New Holdco shall pay the amount of all Allowed but unpaid Professional Fees promptly and directly to the applicable Professional.

        2.      _Post-Effective Date Fees and Expenses_.

        The Reorganized Debtors shall pay in Cash the reasonable legal, professional, or other fees and expenses incurred by the Professionals that have been retained by the Debtors on and after the Effective Date, in the ordinary course of business and without any further notice to or action, order or approval of the Court.  Upon the Effective Date, any requirement that Professionals retained by the Reorganized Debtors comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and such Professionals may be employed and paid in the ordinary course of business without any further notice to or action, order, or approval of the Court.

C.      **Priority Tax Claims.**

        Each holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive, at the option of the applicable Reorganized Debtor, in full satisfaction, settlement, release, and discharge, of and in exchange for such Priority Tax Claim, (i) payment in full in Cash as soon as practicable after the Effective Date in an amount equal to

the amount of such Allowed Priority Tax Claim, plus statutory interest on any outstanding balance from the Effective Date, calculated at the prevailing rate under applicable nonbankruptcy law for each taxing authority and to the extent provided for by section 511 of the Bankruptcy Code, and in a manner not less favorable than the most favored nonpriority Unsecured Claim provided for by the Plan (other than cash payments made to a class of creditors pursuant to section 1122(b) of the Bankruptcy Code); or (ii) such other treatment as may be agreed upon by such holder and the Debtors or otherwise determined upon a Final Order of the Court.

**D.**     **U.S. Trustee Fees.**

Notwithstanding anything to the contrary contained herein, on the Effective Date, the Debtors shall pay, in full, in Cash, any fees due and owing to the U.S. Trustee at the time of Confirmation.  On and after the Effective Date, the Reorganized Debtors shall be responsible for filing required post-confirmation reports and paying quarterly fees due to the U.S. Trustee for the Reorganized Debtors until the entry of a final decree in such Debtors Chapter 11 Cases or until such Chapter 11 Cases are converted or dismissed.  Each and every one of the Debtors shall remain obligated to pay quarterly fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF
## CLAIMS AND EQUITY INTERESTS

**A.**     **Classification of Claims and Equity Interests.**

Except for those Claims addressed in Article II, all Claims and Equity Interests are placed in the Classes set forth below.  A Claim or Equity Interest is placed in a particular Class only to the extent that the Claim or Equity Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Classes.  A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled before the Effective Date.

**B.**     **Distributions of Common Units to Holders of Class 3 Claims.**

As soon as practicable after the Effective Date, distributions to holders of Class 3 Secured Noteholder Claims Against Note Obligor Debtors held through The Depository Trust Company shall be made by mandatory exchange via presentment of the applicable public securities in exchange for the Common Units of New Holdco to which the applicable holders are entitled.

**C.**     **Summary of Classification and Class Identification.**

The Plan constitutes a separate chapter 11 plan of reorganization for each Debtor, and unless otherwise explained herein, the classifications set forth below shall be deemed to

01:15863019.6

apply to each Debtor, as applicable.  If there are no Claims or Equity Interests in each such class for a particular Debtor, such class shall not exist with respect to that Debtor's Plan.  Below is a chart identifying Classes of Claims and Equity Interests, a description of whether each Class is Impaired, and each Class's voting rights.

| Class | Claim or Equity Interest | Status | Voting Rights |
|-------|--------------------------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Secured Noteholder Claims Against Note Obligor Debtors | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| 5 | Intercompany Claims | Unimpaired | Deemed to Accept |
| 6 | Subsidiary Equity Interests | Unimpaired | Deemed to Accept |
| 7 | Equity Interests in Windsor Holdings Limited | Impaired | Deemed to Reject |

Consistent with § 1122 of the Bankruptcy Code, a Claim or Equity Interest is classified by the Plan in a particular Class only to the extent the Claim or Equity Interest is within the description of the Class, and a Claim or Equity Interest is classified in a different Class to the extent it is within the description of that different Class.  This Plan does not effect a substantive consolidation of the Debtors.

The treatment in this Plan is in full and complete satisfaction of the legal, contractual, and equitable rights that each entity holding an Allowed Claim or an Allowed Equity Interest may have in or against the applicable Debtor or its property.  This treatment supersedes and replaces any agreements or rights those entities have in or against the applicable Debtor or its property.  All distributions under the Plan will be tendered to the Person holding the Allowed Claim or Allowed Equity Interest in accordance with the terms of this Plan.

**D.**     **Treatment of Classified Claims and Equity Interests.**

1.      *Class 1 – Other Priority Claims*.

(a)     Classification:  Class 1 consists of Other Priority Claims.

(b)     Treatment:  Except to the extent that a holder of an Allowed Other Priority Claim agrees in writing to less favorable treatment, in full and final satisfaction, settlement, release and discharge and in exchange for each Allowed Other Priority Claim, each holder of an Allowed Other Priority Claim shall receive payment in Cash in an amount equal to such Allowed Other Priority Claim as soon as practicable after the later of (i) the Effective Date and (ii) thirty (30) days after the date when such Other Priority Claim becomes an Allowed Other Priority Claim.

(c)     Voting:  Class 1 is Unimpaired by the Plan, and each holder of a Class 1 Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 1 Other Priority Claims are not entitled to vote to accept or reject the Plan.

2.      _Class 2 – Other Secured Claims_.

(a)      <u>Classification</u>:  Class 2 consists of Other Secured Claims.

(b)      <u>Treatment</u>:  Except to the extent that a holder of an Allowed Other Secured Claim agrees in writing to less favorable treatment, at the option of the Debtors with the consent of the Supporting Noteholders, in full and final satisfaction, settlement, release and discharge of and in exchange for such Other Secured Claim, each holder of an Allowed Other Secured Claim shall either:  (i) have its Allowed Other Secured Claim Reinstated and rendered Unimpaired, (ii) receive Cash in an amount equal to such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim, if such interest is required to be paid pursuant to sections 506(b) and/or 1129(a)(9) of the Bankruptcy Code, as soon as practicable after the later of (a) the Effective Date, and (b) thirty (30) days after the date such Other Secured Claim becomes an Allowed Other Secured Claim, or (iii) receive the Collateral securing its Allowed Other Secured Claim as soon as practicable after the later of (a) the Effective Date and (b) thirty (30) days after the date such Other Secured Claim becomes an Allowed Other Secured Claim.

(c)      <u>Voting</u>:  Class 2 is Unimpaired by the Plan, and each holder of a Class 2 Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 2 Other Secured Claims are not entitled to vote to accept or reject the Plan.

3.      _Class 3 – Secured Noteholder Claims Against Note Obligor Debtors_.

(a)      <u>Classification</u>:   Class 3 consists of Secured Noteholder Claims against Note Obligor Debtors.

(b)      <u>Treatment</u>:   Upon the Effective Date of the Plan, the Secured Noteholder Claims shall be Allowed, in the aggregate, in the amount of $195,941,657.29.  On or as soon as practicable after the Effective Date, in full and final satisfaction, settlement, release and discharge of and in exchange for each Secured Noteholder Claim, each holder of an Allowed Secured Noteholder Claim shall receive its Pro Rata share of Common Units in Reorganized Windsor.

(c)      <u>Voting</u>:   Class 3 is Impaired.   Therefore, holders of Class 3 Secured Noteholder Claims are entitled to vote to accept or reject the Plan.

4.      _Class 4 – General Unsecured Claims_

(a)      <u>Classification</u>:   Class 4 consists of General Unsecured Claims against the Debtors.

(b)      <u>Treatment</u>:   In full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed General Unsecured Claim against the Debtors, on the Effective Date, each holder of an Allowed General Unsecured Claim shall, at the discretion of the Reorganized Debtor:  (i) be Reinstated as an obligation of the Reorganized Debtors, and be paid in accordance with the ordinary course terms, (ii) receive such other treatment as may be

agreed between such holder and the Reorganized Debtors, or (iii) receive such other treatment that will render it Unimpaired pursuant to section 1124 of the Bankruptcy Code.

(c)     Voting:  Class 4 is Unimpaired.  Therefore, holders of Class 4 General Unsecured Claims are not entitled to vote to accept or reject the Plan.

5.     *Class 5 – Intercompany Claims*.

(a)     Classification:  Class 5 consists of Intercompany Claims.

(b)     Treatment:  On the Effective Date, Intercompany Claims will be Reinstated in full.  On and after the Effective Date, the Debtors and the Reorganized Debtors will be permitted to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Reorganized Debtors to satisfy their obligations under the Plan. Except as set forth herein, any changes to intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' historical intercompany account settlement practices.

(c)     Voting:  Class 5 is Unimpaired.  Holders of Class 5 Intercompany Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, as applicable.  Therefore, holders of Class 5 Intercompany Claims are not entitled to vote to accept or reject the Plan.

6.     *Class 6 –Subsidiary Equity Interests*.

(a)     Classification:  Class 6 consists of any and all Subsidiary Equity Interests.

(b)     Treatment:  On the Effective Date, Subsidiary Equity Interests shall be Reinstated.

(c)     Voting:  Class 6 is Unimpaired.  Holders of Class 6 Subsidiary Equity Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 6 Subsidiary Equity Interests are not entitled to vote to accept or reject the Plan.

7.     *Class 7 –Equity Interests in Windsor Holdings Limited*.

(a)     Classification:  Class 7 consists of any and all Equity Interests in Debtor Windsor Holdings Limited.

(b)     Treatment:  On the Effective Date, Equity Interests in Debtor Windsor Holdings Limited shall be cancelled and discharged and shall be of no further force and effect, whether surrendered for cancellation or otherwise and holders of Class 7 Equity Interests shall not receive or retain any property under the Plan on account of such Equity Interests.

(c)     Voting:  Class 7 is Impaired.  Holders of Class 7 Equity Interests are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the

01:15863019.6

Bankruptcy Code. Therefore, holders of Class 7 Equity Interests are not entitled to vote to accept or reject the Plan.

**E.      Special Provision Regarding Unimpaired and Reinstated Claims.**

Except as otherwise specifically provided in this Plan, nothing herein shall be deemed to affect, diminish, or impair the Debtors' or the Reorganized Debtors' rights and defenses, both legal and equitable, with respect to any Reinstated Claim or Unimpaired Claim, including, but not limited to, legal and equitable defenses to setoffs or recoupment against Reinstated Claims or Unimpaired Claims; and, except as otherwise specifically provided in this Plan, nothing herein shall be deemed to be a waiver or relinquishment of any Cause of Action or other legal or equitable defense which the Debtors had immediately prior to the Petition Date, against or with respect to any Claim left Unimpaired by this Plan. Except as otherwise specifically provided in this Plan, the Reorganized Debtors shall have, retain, reserve, and be entitled to assert all such Causes of Action, rights of setoff, and other legal or equitable defenses which they had immediately prior to the Petition Date fully as if the Chapter 11 Cases had not been commenced, and all of the Reorganized Debtors' legal and equitable rights with respect to any Reinstated Claim or Claim left Unimpaired by this Plan may be asserted after the Confirmation Date and the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.      General Settlement of Claims and Interests.**

The provisions of the Plan shall, upon consummation, constitute a good faith compromise and settlement pursuant to Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code between the Debtors and the Supporting Noteholders and the Debtors and holders of Claims and Equity Interests. In the event that, for any reason, the Confirmation Order is not entered or the Effective Date does not occur, the Debtors and the Supporting Noteholders reserve all of their respective rights with respect to any and all disputes resolved and settled under the Plan. The entry of the Confirmation Order shall constitute the Court's approval of each of the compromises and settlements embodied in the Plan, and the Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, their estates, creditors, and other parties-in-interest, and are fair, equitable, and within the range of reasonableness. The provisions of the Plan, including, without limitation, its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable.

**B.      Voting of Claims.**

Each holder of a Claim as of the Voting Deadline in an Impaired Class of Claims that is not (a) deemed to have rejected the Plan or (b) conclusively presumed to have accepted the Plan, and that held such Claim that has not been disallowed by the Court as of the Voting Record Date, shall be entitled to vote to accept or reject the Plan. The instructions for completion of the Ballots are set forth in the instructions accompanying the Ballot. Approval for

the procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan will be sought in the Plan Scheduling Motion.  The procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan are described in the Disclosure Statement.

C.      **Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.**

Class 7 of Equity Interests in Windsor Holdings Limited is deemed to reject this Plan.  Accordingly, this Plan shall constitute a motion to request that the Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code with respect to such non-accepting Class.

D.      **Limited Liability Company.**

On or before the Effective Date, a new holding company ("**New Holdco**") will be formed as a Marshall Islands limited liability company and all assets of the Debtor Windsor Holdings Limited will be conveyed and transferred to New Holdco.  In connection with the vesting and transfer of such assets, any attorney-client privilege, work-product protection or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Reorganized Debtors shall vest in New Holdco and the Reorganized Debtors.  The Debtors are authorized to take all necessary actions to effectuate the transfer of such privileges, protections and immunities.  The Operating Agreement will provide for issuance of Common Units, 100% of which will be distributed to holders of Secured Noteholder Claims.  New Holdco will be managed by a board of managers (the "**Board of Managers**") selected by the Supporting Noteholders prior to the Confirmation Date.  New Holdco will have authority to retain, on behalf of New Holdco, any counsel, financial advisors, claims agents, auditors, or other such professionals as the Board of Managers deems appropriate at all times.  The Board of Managers may select any professionals in their sole discretion, and prior employment in any capacity in the Chapter 11 Cases on behalf of the Debtors and the Debtors' estates shall not preclude New Holdco's retention of such professionals.  The relative duties and responsibilities of the Board of Managers shall be set forth in the Operating Agreement.  Consistent with section 1123(a)(6) of the Bankruptcy Code, the Operating Agreement shall include a provision prohibiting the issuance of nonvoting equity securities.

E.      **Continued Corporate Existence and Vesting of Assets.**

Except as otherwise provided herein:  (i) each Debtor will, as a Reorganized Debtor, continue to exist after the Effective Date as a separate legal entity, with all of the powers of such a legal entity under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger, dissolution or otherwise) under applicable law; and (ii) on the Effective Date, all property of its Estate, and any property acquired by such Debtor or Reorganized Debtor under the Plan, will vest in such Reorganized Debtor free and clear of all Claims, Liens, charges, other encumbrances, Equity Interests and other interests, except for the Liens and Claims established under the Plan.  To the extent any such certificate of incorporation, bylaws or other analogous formation or governing documents are amended in connection with the Plan, such documents are deemed to be amended by the Plan and require no further action or approval other than any requisite filings required under applicable state, provincial or federal law.

On and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire and dispose of property and compromise or settle any claims without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, subject only to those restrictions expressly imposed by the Plan or the Confirmation Order as well as the documents and instruments executed and delivered in connection therewith, including the documents, exhibits, instruments and other materials comprising the Plan Supplement.

**F.      Issuance of Common Units of New Holdco.**

1.      *Issuance of Common Units*.   Issuance of Common Units shall be authorized under the Certificate of Formation and Operating Agreement of New Holdco, and the Common Units shall be issued on the Effective Date and distributed as soon as practicable thereafter in accordance with the Plan.  All Common Units, issuable in accordance with the Plan, when so issued, shall be duly authorized, validly issued, fully paid, and non-assessable.  The issuance of Common Units is authorized without the need for any further corporate action and without any further action by any holder of a Claim or Equity Interest.

2.      *Exemption from Registration*.   Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of any securities pursuant to this Plan and any and all settlement agreements incorporated herein shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act to the maximum extent permitted thereunder and any other applicable State or local law requiring registration prior to the offering, issuance, distribution or sale of securities.  In addition, except as otherwise provided in this Plan, to the maximum extent provided under section 1145 of the Bankruptcy Code, any and all New Common Shares contemplated by this Plan and any and all settlement agreements incorporated therein will be freely tradable by the recipients thereof, subject to:  (1) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with any rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; (2) the restrictions, if any, on the transferability of such Securities and instruments; and (3) applicable regulatory approval.

3.      *Dissolution of Certain Debtors*.   As of the Effective Date, at the sole discretion of the Supporting Noteholders, the Debtors or Reorganized Debtors may (a) cause any or all of the Debtors to be merged into one or more of the Debtors, dissolved, or otherwise consolidated, (b) cause the transfer of assets between or among the Debtors, or (c) engage in any other transaction in furtherance of this Plan.  Any such transaction shall be effective as of the Effective Date pursuant to the Confirmation Order without any further action by the members, managers, stockholders or directors of any of the Debtors or the Reorganized Debtors.  The Debtors shall file with the Plan Supplement the designation of any Debtors that will be merged or dissolved.

**G.      Restructuring Support Agreement Professional Fees.**

On the Effective Date, the Reorganized Debtors shall pay, in full, in Cash, the unpaid reasonable fees, expenses, costs, and other charges of the Supporting Noteholders,

including the costs, fees and expenses of Paul, Weiss, Rifkind, Wharton & Garrison LLP, Landis Rath & Cobb LLP and Houlihan Lokey Capital Inc., in accordance with the *Final Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting Adequate Protection to the Secured Parties, and (C) Granting Related Relief*, entered by the Court in these Chapter 11 Cases (the "**Cash Collateral Order**"). Such fees, expenses, costs, and other charges shall be subject to the review process contemplated by paragraph 11 of the Cash Collateral Order.

## H.    Secured Notes Indenture Trustee Fees and Expenses.

In full satisfaction of any Allowed Indenture Trustee Fee Claims for fees and expenses incurred through the Confirmation Date, including to the extent such Allowed Indenture Trustee Fee Claims are secured by any Charging Liens under the Indentures and all Restructuring Support Agreement Professional Fees payable under the Restructuring Support Agreement, the Reorganized Debtors will distribute to the Secured Notes Indenture Trustees on the Effective Date Cash equal to the amount of the Allowed Indenture Trustee Fee Claims; provided, however, that with respect to any portion of such Indenture Trustee Fee Claims to which the U.S. Trustee, the Debtors or the Reorganized Debtors shall have objected within the later of (x) five (5) Business Days prior to the Effective Date, and (y) twenty (20) days of receipt of the request for payment, no distribution shall be payable hereunder until such objection has been resolved.   All Allowed Indenture Trustee Fee Claims, including Restructuring Support Agreement Professional Fees payable under the Restructuring Support Agreement and the Plan through the Effective Date, shall be payable by the Reorganized Debtors as soon as practicable after the Effective Date.

As a condition to receiving payment thereof, a holder of an Indenture Trustee Fee Claim shall deliver to the Debtors or the New Board, as applicable, written copies of invoices in respect of such claims, with narrative descriptions of the services rendered (including appropriate redactions to preserve privileged matters) and itemization of expenses incurred in such detail and with such supporting documentation as is reasonably requested by the Debtors or the New Board.  An Indenture Trustee Fee Claim shall be deemed Allowed except to the extent there is a timely objection.  If there is a timely objection to the request for payment of any Indenture Trustee Fee Claim, the undisputed amount of any Indenture Trustee Fee Claims with respect to which such objection(s) are pending shall be Allowed and paid by the Reorganized Debtors on the Effective Date or as soon thereafter as reasonably practicable.  The Reorganized Debtors shall not be required to make any payments with respect to the disputed portion of an Indenture Trustee Fee Claim as to which the U.S. Trustee, the Debtors or Reorganized Debtors have objected until resolved or determined by the Court.  In the event such objector(s) are unable to resolve a dispute as to an Indenture Trustee Fee Claim, the Secured Notes Indenture Trustee may, in its sole discretion, elect to (i) submit any such dispute to the Court for resolution by application requesting payment of the disputed portion of the Indenture Trustee Fee Claims in accordance with the reasonableness standard (and not subject to the requirements of sections 503(b)(3) and (4) of the Bankruptcy Code, which shall not apply) or (ii) assert their Charging Liens (to the extent such Lien exists under the Indentures) to obtain payment of a disputed portion of the Indenture Trustee Fee Claim in lieu of Court resolution described in subsection (i).

I.       **Cancellation of Existing Securities.**

On the Effective Date, except as otherwise specifically provided for in the Plan: (i) the obligations of the Debtors under the Secured Notes Indenture, and any other certificate, share, note, bond, indenture, purchase right, option, warrant or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in a Debtor giving rise to any Claim or Equity Interest (except such certificates, notes or other instruments or documents evidencing indebtedness or obligations of a Debtor that are specifically reinstated pursuant to the Plan), shall be cancelled as to such Debtor, and the applicable Reorganized Debtor shall not have any continuing obligations thereunder; and (ii) the obligations of a Debtor pursuant, relating or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants or other instruments or documents evidencing or creating any indebtedness or obligation of such Debtor (except such agreements, certificates, notes or other instruments evidencing indebtedness or obligations of a Debtor that are specifically reinstated pursuant to the Plan or assumed by a Debtor) shall be released and discharged; provided, however, that notwithstanding the occurrence of the Confirmation Date or the Effective Date, any such indenture or agreement that governs the rights of the holder of a Claim shall continue in effect solely for purposes of (a) allowing holders of such Claims to receive distributions under the Plan as provided herein, (b) allowing the Secured Notes Indenture Trustee to make distributions under the Plan as provided herein, and deduct therefrom such reasonable compensation, fees, and expenses due thereunder or incurred in making such distributions, to the extent not paid by the Debtors and authorized under such indenture or agreement, (c) allowing the Secured Notes Indenture Trustee to seek compensation and/or reimbursement of fees and expenses in accordance with the terms of the Plan, (d) allowing the Secured Notes Indenture Trustee to exercise any charging liens it may have under the Secured Notes Indenture against any such distributions and (e) preserving any charging lien or indemnification rights of the Secured Notes Indenture Trustee under the Secured Notes Indenture against the holders of the Secured Notes.  For the avoidance of doubt, nothing in this section shall affect the discharge of or result in any obligation, liability or expense of the Debtors or Reorganized Debtors or affect the discharge of Claims or Equity Interests pursuant to the Bankruptcy Code, the Confirmation Order or the Plan, or result in any additional obligation, expense or liability of the Debtors or Reorganized Debtors.  On and after the Effective Date, all duties and responsibilities of the Secured Notes Indenture Trustee shall be discharged except to the extent required to effectuate the Plan.

J.       **Preservation of Causes of Action.**

In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors may pursue the Causes of Action in their sole discretion.  The Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to the Causes of Action upon, after or as a consequence of the

Confirmation or Consummation.  In accordance with section 1123(b)(3) of the Bankruptcy Code, the Reorganized Debtors may exclusively enforce any and all Causes of Action.  The Reorganized Debtors shall have the exclusive right, authority and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw or litigate to judgment any Causes of Action and to decline to do any of the foregoing without further notice to or action, order or approval of the Court.

**ARTICLE V.**
**PROVISIONS REGARDING CORPORATE GOVERNANCE**
**OF THE REORGANIZED DEBTORS**

A.      **Appointment of Managers.**

      As of the Effective Date, the term of the current members of the Debtors' boards of directors shall expire without further action by any Person and such members shall have no continuing obligations to the Debtor(s), Reorganized Debtors or Holdco on or after the Effective Date.  Effective as of the Effective Date, the initial managers of the New Board shall be comprised of 3 managers appointed by the Supporting Noteholders and disclosed in the Plan Supplement.  Pursuant to 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose in the Plan Supplement the identity and affiliation of the directors and officers of each of the other Reorganized Debtors.

B.      **Powers of Officers.**

      The officers of the Debtors or the Reorganized Debtors, as the case may be, shall have the power to enter into or execute any documents or agreements that they deem reasonable and appropriate to effectuate the terms of the Plan.

C.      **Corporate Action.**

      On or prior to the Effective Date, any Debtor and, after the Effective Date, New Holdco, may enter into or undertake any corporate transactions and may take such actions as may be determined by such Debtor or New Holdco to be necessary or appropriate to effect such corporate transactions as contemplated by and consistent with the Plan.  The actions to effect the corporate transactions may include, without limitation:  (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, conversion, restructuring, recapitalization, disposition, liquidation or dissolution containing terms that are consistent with the terms herein and that satisfy the requirements of applicable law and such other terms to which the applicable entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, disposition, or delegation of any asset, property, right, liability, duty or obligation on terms consistent with the terms herein and having such other terms to which the applicable entities may agree; (iii) the filing of appropriate certificates or articles of merger, consolidation, conversion or dissolution (or similar instrument) pursuant to applicable law; and (iv) all other actions which the applicable entities may determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with such transactions. The corporate transactions may include one or more mergers, consolidations, conversions, restructurings, recapitalizations, dispositions,

liquidations or dissolutions, as may be determined by the applicable Debtors or New Board to be necessary or appropriate to effect the purposes of such transactions for the benefit of New Holdco, including, without limitation, the potential simplification of the organizational structure of the Debtors.  In each case in which the surviving, resulting or acquiring person in any such transaction is a successor to a Debtor, such surviving, resulting or acquiring person will perform the obligations of the applicable Debtor pursuant to this Plan to pay or otherwise satisfy the Allowed Claims against such Debtor, except as provided in any contract, instrument or other agreement or document effecting a disposition to such surviving, resulting or acquiring person, which may provide that another Debtor will perform such obligations.  Implementation of the corporate transactions shall not affect any distributions, discharges, exculpations, releases or injunctions set forth in this Plan.  The corporate transactions shall be authorized and approved by the Confirmation Order pursuant to, among other provisions, sections 1123 and 1141 of the Bankruptcy Code and title 6 and title 8 of the Delaware Code, if applicable, without any further notice, action, third-party consents, court order or process of any kind, except as otherwise set forth herein or in the Confirmation Order.

## ARTICLE VI.
## DISTRIBUTIONS UNDER THE PLAN

**A.      Procedures for Treating Disputed Claims.**

1.      *Filing Proofs of Claim*.  Holders of Claims need not file Proofs of Claim with the Court unless specifically required herein.  In the event that a holder of a Claim elects to file a Proof of Claim with the Court, it will be deemed to have consented to the exclusive jurisdiction of the Court for all purposes with respect to the determination, liquidation, allowance, or disallowance of such Claim.

2.      *Disputed Claims*.  If the Debtors dispute any Claim as to which no Proof of Claim has been filed, such dispute shall be determined, resolved, or adjudicated, as the case may be, in a manner as if the Chapter 11 Cases had not been commenced, provided, however, that the Reorganized Debtors may elect, at their sole option, to object under section 502 of the Bankruptcy Code to any Claim or Proof of Claim filed by or on behalf of a holder of a Claim.

3.      *Objections to Claims*.  Except insofar as a Claim is Allowed under the Plan, after the Effective Date, the Reorganized Debtors shall have the sole and exclusive authority to object to any Claim.  Notwithstanding the foregoing, the U.S. Trustee retains the right to object to Fee Claims and other Administrative Claims.

4.      ***Disallowance of Claims.  Except as provided herein or otherwise agreed, any and all Proofs of Claim shall be deemed expunged from the claims register on the Effective Date without any further notice to or action, order, or approval of the Court and the Claim on which such Proof of Claim was filed shall be determined, resolved, or adjudicated, as the case may be, in the manner as if the Chapter 11 Cases had not been commenced and shall survive the Effective Date as if the Chapter 11 Cases had not been commenced.***

B.     **Allowed Claims.**

1.     *Delivery of Distributions.*  Except with respect to distributions of Common Units, distributions under the Plan shall be made by the Reorganized Debtors (or their agent or designee) to the holders of Allowed Claims in all Classes for which a distribution is provided in this Plan at the addresses set forth on the Schedules, unless such addresses are superseded by Proofs of Claim or transfers of Claim filed pursuant to Bankruptcy Rule 3001 (or at the last known addresses of such holders if the Debtors or the Reorganized Debtors have been notified in writing of a change of address).

2.     *Distribution of Cash.*  Any payment of Cash by the Reorganized Debtors pursuant to the Plan shall be made at the option and in the sole discretion of the Reorganized Debtors by (i) a check drawn on, or (ii) wire transfer from, a bank selected by the Reorganized Debtors.

3.     *Unclaimed Distributions of Cash.*  Subject to Article VI.B.6 herein, any distribution of Cash under the Plan that is unclaimed after one year after it has been delivered (or attempted to be delivered) shall, pursuant to section 347(b) of the Bankruptcy Code, become the property of the Reorganized Debtors against which such Claim was Allowed notwithstanding any domestic state or other escheat or similar laws to the contrary, and the entitlement by the holder of such unclaimed Allowed Claim to such distribution or any subsequent distribution on account of such Allowed Claim shall be extinguished and forever barred.

4.     *Unclaimed Distributions of Common Units.*  Subject to Article VI.B.6 herein, any distribution of Common Units under the Plan that is unclaimed after one year after it has been delivered (or attempted to be delivered) shall be retained by the Reorganized Debtors, notwithstanding any domestic state or other escheat or similar laws to the contrary, and the entitlement by the holder of such Allowed Claim to such distribution or any subsequent distribution on account of such Allowed Claim shall be extinguished and forever barred.

5.     *Saturdays, Sundays, or Legal Holidays.*  If any payment, distribution or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, and shall be deemed to have been completed as of the required date.

6.     *Fractional and De Minimis Distributions.*  Notwithstanding any other provision in the Plan to the contrary, no fractional Common Units shall be issued or distributed pursuant to the Plan.  Whenever any payment of a fraction of Common Unit would otherwise be required under the Plan, the actual distribution made shall reflect a rounding of such fraction to the nearest whole Common Unit (up or down), with half Common Unit or less being rounded down and fractions in excess of a half of Common Unit being rounded up.  The Reorganized Debtors shall not be required to, but may in its sole and absolute discretion, make any payment on account of any Claim in the event that the costs of making such payment exceeds the amount of such payment.

01:15863019.6

7.      *Distributions to Holders of Claims*:

(a)      *Initial Distribution to Claims Allowed as of the Effective Date.*  On or as soon as reasonably practicable after the Effective Date, or as otherwise expressly set forth in the Plan, the Reorganized Debtors (or their agent or designee) shall distribute Cash or Collateral, as the case may be, to the holders of Allowed Claims as contemplated herein.

(b)      *Claims Allowed after the Effective Date.*  Each holder of a Claim that becomes an Allowed Claim subsequent to the Effective Date shall receive the distribution to which such holder of an Allowed Claim is entitled as set forth in Article III, and distributions to such holder shall be made in accordance with the provisions of this Plan.  As soon as practicable after the date that the Claim becomes an Allowed Claim, the Reorganized Debtors shall provide to the holder of such Claim the distribution (if any) to which such holder is entitled under this Plan as of the Effective Date, without any interest to be paid on account of such Claim.

## C.      **Allocation of Consideration.**

The aggregate consideration to be distributed to the holders of Allowed Claims in each Class under the Plan shall be treated as first satisfying an amount equal to the principal amount of the Allowed Claim for such holders, and any remaining consideration as satisfying accrued but unpaid interest, as applicable.

## D.      **Insured Claims.**

If any portion of an Allowed Claim is an Insured Claim, no distributions under the Plan shall be made on account of such Allowed Claim until the holder of such Allowed Claim has exhausted all remedies with respect to any applicable insurance policies.

## E.      **Compliance with Tax Requirements.**

In connection with the Plan, to the extent applicable, the Debtors and the Reorganized Debtors, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Debtors or Reorganized Debtors shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate.  The Debtors and the Reorganized Debtors, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances.

## F.      **Setoff and Recoupment.**

The Debtors or the Reorganized Debtors may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtors may have against

the claimant pursuant to section 558 of the Bankruptcy Code or otherwise, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such Claim it may have against the holder of such Claim.

**Unless otherwise authorized by a Final Order, any holder of a Claim, other than a holder of a Governmental Claim, must assert any setoff rights against a Claim by a Debtor against such Entity by filing an appropriate motion seeking authority to setoff on or before the Confirmation Date or will be deemed to have waived and be forever barred from asserting any right to setoff against a Claim by a Debtor or the Reorganized Debtors, notwithstanding any statement to the contrary in a Proof of Claim or any other pleading or document Filed with the Court or delivered to the Debtors.**

### ARTICLE VII.
### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    <u>Assumption of Executory Contracts and Unexpired Leases</u>.

Except as otherwise provided herein, each Executory Contract and Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically assumed pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such executory contract or unexpired lease:  (i) is expressly identified on the Rejection Schedule; (ii) has been previously rejected by the Debtors by Final Order or has been rejected by the Debtors by order of the Court as of the Effective Date, which order becomes a Final Order after the Effective Date; (iii) is the subject of a motion to reject pending as of the Effective Date; or (iv) is otherwise rejected pursuant to the terms herein.

The Confirmation Order will constitute an order of the Court approving such assumptions pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date or as otherwise set forth in the Plan Supplement.

B.    <u>Cure Claims</u>.

At the election of the Debtors or the Reorganized Debtors, as applicable, any monetary defaults under each Executory Contract and Unexpired Lease to be assumed under the Plan shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code in one of the following ways: (i) payment of the Cure Claim in Cash on or as soon as reasonably practicable to occur of (A) thirty (30) days after the determination of the Cure Claim, and (B) the Effective Date or such other date as may be set by the Court, or (ii) on such other terms as agreed to by the Debtors or Reorganized Debtors and the non-Debtor counterparty to such Executory Contract or Unexpired Lease.  In the event of a dispute pertaining to assumption or assignment, the Cure Claim payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the resolution of the dispute in accordance with Article VII.A of this Plan.  The Reorganized Debtors shall be deemed to have provided adequate assurance of future performance through the promise of the applicable Reorganized Debtor to perform all obligations under any Executory Contract or Unexpired Lease under this Plan.

**ASSUMPTION OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE AND SATISFACTION OF THE CURE CLAIM PURSUANT TO THE PLAN OR OTHERWISE SHALL RESULT IN THE FULL RELEASE AND SATISFACTION OF ANY CLAIMS OR DEFAULTS, WHETHER MONETARY OR NONMONETARY, INCLUDING DEFAULTS OF PROVISIONS RESTRICTING THE CHANGE IN CONTROL OR OWNERSHIP INTEREST COMPOSITION OR OTHER BANKRUPTCY-RELATED DEFAULTS, ARISING UNDER ANY ASSUMED EXECUTORY CONTRACT OR UNEXPIRED LEASE AT ANY TIME BEFORE THE DATE THE DEBTORS OR REORGANIZED DEBTORS ASSUME SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE.  ANY PROOFS OF CLAIM FILED WITH RESPECT TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT HAS BEEN ASSUMED SHALL BE DEEMED MOOT AND EXPUNGED, WITHOUT FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE COURT UPON PAYMENT OF ANY CURE CLAIM**.

**C.**     **Reservation of Rights.**

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, as applicable, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.  In the event a written objection is filed with the Court asserting that a contract or lease is executory or unexpired, the right of the Debtors or Reorganized Debtors to move to reject such contract or lease shall be extended until the date that is thirty (30) days after the entry of a Final Order by the Court determining that the contract or lease is executory or unexpired, in which case the deemed assumption provided for in the Plan shall not apply to such contract or lease.

**D.**     **Rejection of Executory Contracts and Unexpired Leases.**

1.     *Rejection Schedule*.  The Debtors will file the Rejection Schedule with the Court no later than five (5) Business Days before the deadline to object to the Plan.  The Rejection Schedule will include (a) the name of the non-Debtor counterparty, (b) the legal description of the contract or lease to be rejected, and (c) the proposed effective date of rejection. On or as soon as reasonably practicable after the filing of the Rejection Schedule, the Debtors will serve a Rejection Notice as well as notice of filing of the Rejection Schedule upon each non-Debtor counterparty listed thereon that will describe the procedures by which such parties may object to the proposed rejection of their respective Executory Contract or Unexpired Lease and explain how such disputes will be resolved by the Court if the parties are not able to resolve a dispute consensually.

The Confirmation Order will constitute an order of the Court approving such rejections pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date or as otherwise set forth in the Plan Supplement.

2.     *Rejection Damage Claims*.  If the rejection by the Debtors, pursuant to the Plan or otherwise, of an Executory Contract or Unexpired Lease gives rise to a Rejection Damage Claim, a Proof of Claim must be filed with the Court within (i) forty-five (45) days after

01:15863019.6

the date of entry of an order of the Court approving such rejection, or (ii) if the Executory Contract or Unexpired Lease is listed on the Rejection Schedule, within forty-five (45) days after the date of entry of the Confirmation Order.  For the avoidance of doubt, all Allowed Rejection Damage Claims shall be treated as General Unsecured Claims.

3.  ***REQUIREMENT TO FILE A PROOF OF CLAIM FOR REJECTION DAMAGE CLAIMS*.  ANY REJECTION DAMAGE CLAIMS THAT ARE NOT TIMELY FILED SHALL BE DISALLOWED AUTOMATICALLY, FOREVER BARRED FROM ASSERTION, AND SHALL NOT BE ENFORCEABLE AGAINST ANY REORGANIZED DEBTOR WITHOUT THE NEED FOR ANY OBJECTION BY THE REORGANIZED DEBTORS OR FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE COURT, AND ANY SUCH REJECTION DAMAGE CLAIM SHALL BE DEEMED FULLY SATISFIED, RELEASED AND DISCHARGED, NOTWITHSTANDING ANYTHING IN THE SCHEDULES OR A PROOF OF CLAIM TO THE CONTRARY.**

E.  **Assignment.**

Any Executory Contract or Unexpired Lease, if not expressly assumed and assigned to a third party previously in the Chapter 11 Cases, will be deemed assumed and assigned to that Reorganized Debtor pursuant to section 365 of the Bankruptcy Code.  If an objection to a proposed assumption, assumption and assignment or Cure Claim is not resolved in favor of the Debtors before the Effective Date, the applicable Executory Contract or Unexpired Lease may be designated by the Debtors or the Reorganized Debtors for rejection within five (5) Business Days of the entry of a Final Order of the Court resolving the matter against the Debtors. Such rejection shall be deemed effective as of the Effective Date.

F.  **Insurance Policies.**

Notwithstanding anything in this Plan to the contrary, all of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan.  On the Effective Date, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents and instruments related thereto.

G.  **Post-Petition Contracts and Leases.**

All contracts, agreements and leases that were entered into by a Debtor or assumed by a Debtor after the Petition Date shall be deemed assigned by that Debtor to the applicable Reorganized Debtor on the Effective Date.

### ARTICLE VIII.
### CONFIRMATION AND CONSUMMATION OF THE PLAN

A.  **Conditions to Confirmation.**

The following are conditions to the entry of the Confirmation Order unless such conditions, or any of them, have been satisfied or duly waived in accordance with Article VIII.B:

1.      The Court shall have approved the Disclosure Statement with respect to this Plan in an order in form and substance reasonably acceptable to the Debtors and the Supporting Noteholders.

2.      The Confirmation Order, the Plan and Plan Supplement shall be in form and substance acceptable to the Debtors and the Supporting Noteholders.

3.      All authorizations, consents, certifications, approvals, rulings, no-action letters, opinions or other documents or actions required by any law, regulation or order to be received or to occur in order to implement this Plan on the Effective Date shall have been obtained or shall have occurred unless failure to do so will not have a material adverse effect on the Reorganized Debtors. In accordance with the provisions of the Plan, the New Board of Managers of Reorganized Debtors shall have been selected and shall have agreed to serve in such capacity.

B.      **Conditions to Effectiveness.**

The Plan shall not become effective unless and until:

1.      The Certificate of Formation, the other constituent documents of the Reorganized Debtors, and the Operating Agreement, as necessary and applicable, in form and substance acceptable to the Debtors and the Supporting Noteholders, shall have been adopted and (where required by applicable law) filed with the applicable authorities of the relevant jurisdictions of organization and shall have become effective in accordance with such jurisdictions' corporation or limited liability company laws;

2.      the Confirmation Order shall have been entered by the Court and shall be a Final Order;

3.      the Plan Supplement documents shall have been executed and become effective;

4.      all other documents and agreements necessary to implement this Plan on the Effective Date, in form and substance acceptable to the Debtors and the Supporting Noteholders, to the extent required herein or in the Restructuring Support Agreement, shall have been executed and delivered and all other actions required to be taken in connection with the Effective Date shall have occurred.

5.      all Restructuring Support Agreement Professional Fees payable under the Restructuring Support Agreement and the Plan through the Confirmation Date shall be paid by the Debtors prior to or on the Effective Date without any further notice to or action, order, or approval of the Court; and

6.      the Amended Management Agreement shall have been executed and be in full force and effect.

01:15863019.6

C.      **Waiver of Conditions.**

The Debtors, with the written consent of the Supporting Noteholders, to the extent not prohibited by law, may waive one or more of the conditions to (i) confirmation of the Plan set forth in Article VIII.A above at any time without leave of or order of the Court and without any formal action; or (ii) to effectiveness of the Plan set forth in Article VIII.B above at any time.

D.      **Effect of Failure of Conditions.**

In the event that the Effective Date does not occur on or before one hundred and twenty (120) days after the Confirmation Date, upon notification submitted by the Debtors to the Court:  (i) the Confirmation Order may be vacated, (ii) no distributions under the Plan shall be made; (iii) the Debtors and all holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; and (iv) the Debtors' obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained in the Plan shall constitute or be deemed a waiver, release, or discharge of any Claims or Equity Interests by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors unless extended by Court order.

E.      **Vacatur of Confirmation Order.**

If a Final Order denying confirmation of the Plan is entered, or if the Confirmation Order is vacated, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall:  (i) constitute a waiver, release or discharge of any Claims against or Equity Interests in the Debtor; (ii) prejudice in any manner the rights of the holder of any Claim against, or Equity Interest in, the Debtors; (iii) prejudice in any manner any right, remedy or claim of the Debtors; or (iv) be deemed an admission against interest by the Debtors.  If a Final Order denying confirmation of the Plan is entered, the Restructuring Support Agreement shall be deemed null and void in all respects.

F.      **Modification of the Plan.**

Subject to the limitations contained in the Plan, and subject to the written consent of the Supporting Noteholders as set forth herein and in the Restructuring Support Agreement, (i) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code, and (ii) after entry of the Confirmation Order, the Debtors (with the written consent of the Supporting Noteholders) or the Reorganized Debtors, as the case may be, may amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code.

G.      **Revocation, Withdrawal, or Non-Consummation.**

1.      *Right to Revoke or Withdraw*.  The Debtors reserve the right to revoke or withdraw the Plan at any time before the Effective Date; provided, however, that such action shall not alter the rights of the parties to the Restructuring Support Agreement.

2.    *Effect of Withdrawal, Revocation, or Non-Consummation*.  If the Debtors revoke or withdraw the Plan prior to the Effective Date, or if the Confirmation Date or the Effective Date does not occur, the Plan, any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Equity Interest or Class of Claims or Equity Interests), the assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, any release, exculpation or indemnification provided for in the Plan, and any document, including the Restructuring Support Agreement, or agreement executed pursuant to the Plan shall be null and void.  In such event, nothing contained herein, and no acts taken in preparation for consummation of the Plan, shall be deemed to constitute a waiver or release of any Claims by or against or Equity Interests in the Debtors or any other Person, to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or to constitute an admission of any sort by the Debtors or any other Person.

## ARTICLE IX.
## EFFECT OF CONFIRMATION AND INDEMNIFICATION, RELEASE, INJUNCTIVE AND RELATED PROVISIONS

A.    **Binding Effect**.

From and after and after the Confirmation Date, but subject to the occurrence of the Effective Date, this Plan shall be binding and inure to the benefit of the Debtors, all present and former holders of Claims and Equity Interests, and their respective assigns, including New Holdco.

B.    **Discharge of the Debtors**.

**Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument or other agreement or document created pursuant to the Plan, the distributions, rights and treatment that are provided in the Plan shall be in complete satisfaction, discharge and release of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Equity Interests and Causes of Action against any Debtor of any nature whatsoever, including any interest accrued on Claims or Equity Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against and Equity Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Equity Interests, including demands, liabilities and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not:  (i) a Proof of Claim based upon such debt, right or Equity Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Equity Interest based upon such debt, right or Equity Interest is Allowed; or (iii) the holder of such a Claim or Equity Interest has accepted the Plan or is entitled to receive a distribution hereunder.  Any default by the Debtors with respect to any Claim or Equity Interest that existed immediately before or on account of the filing of the**

Chapter 11 Cases shall be deemed cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Equity Interests subject to the Effective Date occurring.

C.      <u>Injunction.</u>

Except as otherwise provided in this Plan or in any document, instrument, release or other agreement entered into in connection with this Plan or approved by order of the Court, the Confirmation Order shall provide, among other things, that from and after the Effective Date all Persons or Entities who have held, hold, or may hold Claims against or Equity Interests in the Debtors are (i) permanently enjoined from taking any of the following actions against the Estate(s) or any of their property on account of any such Claims or Equity Interests and (ii) permanently enjoined from taking any of the following actions against any of the Debtors, the Reorganized Debtors or their property on account of such Claims or Equity Interests:  (A) commencing or continuing, in any manner or in any place, any action or other proceeding; (B) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (C) creating, perfecting, or enforcing any Lien or encumbrance; (D) asserting a setoff or right of subrogation of any kind against any debt, liability or obligation due to the Debtors; and (E) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; <u>provided</u>, <u>however</u>, that nothing contained herein shall preclude such Persons or Entities from exercising their rights pursuant to and consistent with the terms of this Plan and the contracts, instruments, releases, indentures and other agreements or documents delivered or Reinstated under or in connection with this Plan.  By accepting distributions pursuant to this Plan, each Holder of an Allowed Claim or Equity Interest will be deemed to have specifically consented to the injunctions set forth in this Article IX.C.

D.      <u>Releases, Exculpations and Injunctions of Released Parties.</u>

1.      ***Releases by the Debtors*.**  On the Effective Date, and notwithstanding any other provisions of the Plan, the Debtors and the Reorganized Debtors, on behalf of themselves and their Estates, shall be deemed to unconditionally release the Released Parties from any and all claims, obligations, suits, judgments, damages, rights, Causes of Action and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, assertable on behalf of or derivative from the Debtors, based in whole or in part upon actions taken solely in their respective capacities described herein or any omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the Disclosure Statement, the Restructuring Support Agreement, the documents included in the Plan Supplement, or the Plan or related agreements, instruments, or other documents, <u>provided</u>, <u>however</u>, that (a) no individual shall be released from any act or omission that constitutes gross negligence or wilful misconduct as determined by a Final Order, (b) other than with respect to the Secured Noteholder Claims, the Reorganized Debtors shall not relinquish or waive the right to assert any of the foregoing as a legal or equitable defense or right of set-

off or recoupment against any Claims, and (c) the foregoing release applies to the Released Parties solely in their respective capacities described herein.

2. *Releases by Holders of Claims.*    On the Effective Date, and notwithstanding any other provisions of the Plan, (i) each Releasing Party will be deemed to have forever released and covenanted with the Released Parties not to sue or otherwise seek recovery from any Released Party on account of any Claim, including any Claim or Cause of Action based upon tort, breach of contract, violations of federal or state securities laws or otherwise, based upon any act, occurrence, or failure to act from the beginning of time through the Effective Date in any way related to the Debtors or their businesses and affairs and (ii) each Releasing Party will be deemed to have forever released and covenanted with the Released Parties not to assert against any Released Party any Claim, obligation, right, Cause of Action or liability that any holder of a Claim may be entitled to assert, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part on any act or omission, transaction, or occurrence from the beginning of time through the Effective Date in any way relating to the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated under the Plan, the Chapter 11 Cases, the documents included in the Plan Supplement, the Restructuring Support Agreement, the Plan, or the Disclosure Statement or related agreements, instruments or other documents, **provided**, however, the foregoing release will not (i) apply to obligations arising under the Plan, (ii) be construed to prohibit a party in interest from seeking to enforce the terms of the Plan, and (iii) apply to any act or omission that constitutes gross negligence or wilful misconduct as determined by a Final Order.  The foregoing releases apply to the Released Parties solely in their respective capacities described herein.

3. *Exculpation and Injunction.*    The Debtors and their officers, directors, and retained professionals shall have no liability whatsoever to any holder or purported holder of an Administrative Expense Claim, Claim, or Equity Interest for any act or omission that occurred between the Petition Date and the Effective Date in connection with the Chapter 11 Cases, including the preparation, negotiation, and filing of the Plan, the Disclosure Statement, the negotiation of the documents included in the Plan Supplement, the pursuit of approval of the Disclosure Statement or the solicitation of votes for confirmation of the Plan, the Chapter 11 Cases, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, or any transaction contemplated by the Plan or Disclosure Statement or in furtherance thereof except for any act or omission that constitutes willful misconduct or gross negligence as determined by a Final Order.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such Released Parties from liability.  Pursuant to section 105 of the Bankruptcy Code, no holder or purported holder of an Administrative Expense Claim, Claim or Equity Interest shall be permitted to commence or continue any Cause of Action, employment of process, or any act to collect, offset, or recover any Claim against a Released Party that accrued on or before the Effective Date.

E.      <u>Votes Solicited in Good Faith</u>.

       The Debtors have, and upon entry of the Confirmation Order shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code. The Debtors (and their respective affiliates, agents, directors, officers, and Professionals) have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of the securities offered and sold under the Plan and therefore have not been, and on account of such offer and issuance will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer or issuance of the securities offered and distributed under the Plan.

F.      <u>Preservation of Insurance</u>.

       The Debtors' discharge and release from all Claims as provided herein shall not, except as necessary to be consistent with this Plan, diminish or impair the enforceability of any insurance policy that may provide coverage for Claims against the Debtors, the Reorganized Debtors, their current and former directors and officers, or any other Person.

<h2 style="text-align:center">ARTICLE X.<br>RETENTION OF JURISDICTION</h2>

       Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction:

       1.     to resolve any matters related to (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor or Reorganized Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, in accordance with the terms of this Plan, any Executory Contracts or Unexpired Leases to the Rejection Schedule or otherwise; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

       2.     to determine, adjudicate, or decide any other applications, adversary proceedings, contested matters, and any other matters pending before the Court on the Effective Date;

       3.     to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

       4.     to resolve disputes as to the ownership of any Claim or Equity Interest;

       5.     to allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Equity Interest, including the

resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Equity Interests;

6. to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, reversed, modified or vacated;

7. to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

8. to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Court, including the Confirmation Order;

9. to hear and determine all applications, and disputes relating thereto, for compensation and reimbursement of expenses of Professionals;

10. to hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan;

11. to hear and determine any issue for which the Plan requires a Final Order of the Court;

12. to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

13. to hear and determine any Causes of Action of the Debtors, all of which have been expressly preserved under the Plan;

14. to hear and determine any matter regarding the existence, nature and scope of the Debtors' discharge;

15. to hear and determine any matter, case, controversy, suit, dispute, or Cause of Action (i) regarding the existence, nature, and scope of the discharge, releases, injunctions, and exculpation provided under the Plan, and (ii) enter such orders as may be necessary or appropriate to implement such discharge, releases, injunctions, exculpations, and other provisions;

16. to enter a final decree closing the Chapter 11 Cases;

17. to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan;

18. to adjudicate any and all disputes arising from or relating to distributions under the Plan;

19. to enforce all orders previously entered by the Court; and

20.     to hear any other matter not inconsistent with the Bankruptcy Code.

# ARTICLE XI.
## MISCELLANEOUS PROVISIONS

**A.      <u>Immediate Binding Effect</u>.**

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all holders of Claims or Equity Interests (irrespective of whether such Claims or Equity Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with any Debtor.

**B.      <u>Governing Law</u>.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Delaware (without reference to the conflicts of laws provisions thereof that would require or permit the application of the law of another jurisdiction) shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, unless otherwise specified.

**C.      <u>Filing or Execution of Additional Documents</u>.**

On or before the Effective Date, the Debtors or the Reorganized Debtors shall (on terms materially consistent with the Plan) file with the Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, which shall be in form and substance acceptable to the Debtors and the Supporting Noteholders in accordance with the Restructuring Support Agreement.

**D.      <u>Term of Injunctions of Stays</u>.**

All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**E.      <u>Withholding and Reporting Requirements</u>.**

In connection with the Plan and all instruments issued in connection therewith and distributions thereon, the Reorganized Debtors shall comply with all withholding and reporting requirements imposed by any United States federal, state, local or non-U.S. taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors shall be

authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distribution pending receipt of information necessary or appropriate to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.

**F.     Exemption From Transfer Taxes.**

Pursuant to, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, all transfers of property pursuant hereto, including (i) the issuance, transfer or exchange under the Plan of Common Units, (ii) the making or assignment of any lease or sublease, or (iii) the making or delivery of any other instrument whatsoever, in furtherance of or in connection with the Plan, shall not be subject to any stamp tax or similar tax, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax.

**G.     Plan Supplement.**

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  The documents contained in the Plan Supplement shall be available online at www.pacer.gov and cases.primeclerk.com/windsor. Holders of Claims or Equity Interests may obtain a copy of the Plan Supplement upon written request to counsel to the Debtors.  The Debtors reserve the right, in accordance with the terms hereof, to modify, amend, supplement, restate or withdraw any part of the Plan Supplement after they are filed and shall promptly make such changes available online at www.pacer.gov and cases.primeclerk.com/windsor.

**H.     Payment of Statutory Fees.**

All fees payable pursuant to section 1930 of title 28, United States Code, as determined by the Court, shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed or closed, whichever occurs first.

**I.     Amendment  or Modification of this Plan.**

Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123 and 1125 of the Bankruptcy Code, the Debtors reserve the right to alter, amend or modify this Plan at any time prior to or after the Confirmation Date but prior to the substantial consummation of this Plan, subject to the written consent of the Supporting Noteholders.

**J.     Severability of Plan Provisions.**

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Court to be invalid, void or unenforceable, the Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void

or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation, provided, however, that, to the extent any alteration or interpretation of any term or provision of this Plan adversely affects any of the Supporting Noteholders, then the Debtors shall be required to obtain the consent of the majority of the Supporting Noteholders, with respect to such alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**K.**     **Successors and Assigns.**

This Plan shall be binding upon and inure to the benefit of the Debtors and their respective successors and assigns, including, without limitation, the Reorganized Debtors. The rights, benefits and obligations of any Person or Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person or Entity.

**L.**     **Notices.**

All notices, requests, and demands hereunder to be effective shall be made in writing or by e-mail, and unless otherwise expressly provided herein, shall be deemed to have been duly given when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed. Each of such notices shall be addressed as follows:

1.     *To the Debtors*: Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 N. King Street, Wilmington, Delaware 19801, attention: Pauline K. Morgan; Sean T. Greecher, Robert F. Poppiti, Jr., (ii) if by e-mail to: pmorgan@ycst.com; sgreecher@ycst.com; rpoppiti@ycst.com.

2.     *To the Supporting Noteholders*: (i) if by mail to: (a) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019, attention: Andrew N. Rosenberg, Esq., Elizabeth R. McColm, Esq., Oksana Lashko, Esq. and (b) Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, DE 19801, attention: Richard S. Cobb, Esq.; (ii) if by e-mail to: arosenberg@paulweiss.com, emccolm@paulweiss.com, olashko@paulweiss.com, and cobb@lrclaw.com.

3.     *To the U.S. Trustee*: (i) if by mail to: Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington De 19801, attention: Benjamin A. Hackman, Esq.; (ii) if by e-mail to: benjamin.a.hackman@usdoj.gov.

**M.**     **Conflicts.**

The terms of the Plan shall govern in the event of any inconsistency between the Plan and the Disclosure Statement. In the event of any inconsistency with the Plan and the Confirmation Order, the Confirmation Order shall govern with respect to such inconsistency.

Dated:   October 8, 2014
         Wilmington, Delaware

                              Respectfully submitted,

                              **Windsor Petroleum Transport Corporation, <u>et
                              al.</u>**

                              By:   _____/s/ *Paul M. Leand, Jr.*_____
                                    Paul M. Leand, Jr.
                                    Chief Restructuring Officer