## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------------x
                                        **:**

**In re:**                                 **: Chapter 11**

**WINDSOR PETROLEUM TRANSPORT**       **: Case No. 14–11708 (PJW)**
**CORPORATION,** *et al.,*[1]                   **:**

                      **: (Jointly Administered)**
              **Debtors.**         **:**

---------------------------------------------------------------------x

### DECLARATION OF PAUL M. LEAND, JR. IN SUPPORT
### OF CONFIRMATION OF AMENDED PLAN OF REORGANIZATION OF THE
### <u>DEBTORS PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE</u>

PAUL M. LEAND, JR., pursuant to 28 U.S.C. § 1746, declares:

1.      I am the Chief Restructuring Officer of Windsor Petroleum Transport Corporation and its above-captioned affiliated debtors and debtors-in-possession (each, a "**Debtor**" and collectively, the "**Debtors**").  In this capacity, I am generally familiar with the operations, business and financial affairs of the Debtors, and have been actively involved in all aspects of these Chapter 11 Cases.  I submit this declaration in support of confirmation of the *Amended Plan of Reorganization of the Debtors Pursuant to Chapter 11 of the Bankruptcy Code* (as may be further amended from time to time, the "**Plan**").[2]

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, where applicable, are:  Windsor Petroleum Transport Corporation (1381) ("**Windsor Petroleum**"),Windsor Holdings Limited, Buckingham Petro Limited, Buckingham Shipping Plc, Caernarfon Petro Limited, Caernarfon Shipping Plc, Sandringham Petro Limited, Sandringham Shipping Plc, Holyrood Petro Limited, and Holyrood Shipping Plc.  The mailing address for Windsor Petroleum is c/o Frontline Ltd., PO Box HM 1593, Par-la-Ville Place, 14 Par-la-Ville Road, Hamilton HM 08, Bermuda.  The mailing address for each of the other Debtors is Fort Anne, Douglas, Isle of Man, IM1 5PD, British Isles.

[2]  Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Plan or the Disclosure Statement (as defined below).

2.      Except as otherwise noted, all matters set forth herein are based on (a) my personal knowledge and belief, (b) my review of the relevant documents, including the Plan, the Disclosure Statement, and the documents contained in the Plan Supplements, (c) information supplied to me by the Debtors' advisors, (d) my view, based on my personal experience and knowledge of the Debtors' business and financial condition, or (e) for matters involving the requirements for confirmation of the Plan under the Bankruptcy Code, my reliance on the advice of the Debtors' bankruptcy counsel.  If called to testify, I could and would testify to the facts set forth herein.

I.      **BACKGROUND**

3.      I am the Managing Director and Chief Executive Officer of AMA Capital Partners LLC ("**AMA**").   AMA has served as restructuring advisor to the Debtors since September of 2013.   AMA and its professionals have provided strategic and M&A advisory services to parties in the transportation sector for two decades.  I joined AMA in 1998 and was appointed CEO of AMA in 2004.  I lead AMA's restructuring practice, helping AMA earn its position as the pre-eminent maritime restructuring advisor for both creditors and companies alike.  I have been involved in the restructuring of numerous high yield issues, including Golden Ocean, ACL, Pegasus Enterprises and Horizon Lines.  On the offshore side, I have led AMA's efforts in the restructurings of, among others, PetroMENA ASA, Sevan Marine ASA, Remedial Offshore and Equinox Offshore.  I serve as a Director of Golar LNG Partners LP (Nasdaq), Lloyd Fonds AG (Frankfurt Stock Exchange), North Atlantic Drilling (Oslo Stock Exchange), SeaDrill Ltd. (NYSE), Ship Finance International Ltd. (NYSE), as well as privately held Helm International.  I hold a BS/BA from Boston University's School of Management.

01:16295018.2

## II.      THE PLAN AND DISCLOSURE STATEMENT

4.      I am generally familiar with the terms and provisions of the Plan [Docket No. 125], the disclosure statement related to the Plan [Docket No. 126] (the "**Disclosure Statement**"), and the various exhibits, schedules and ancillary documents related thereto, including the Financial Projections and the Liquidation Analysis.  I was personally involved in the development of and discussions regarding the terms of the Plan, among other things.

5.      The Plan is the result of extensive, arm's length negotiations among the Debtors and the Supporting Noteholders.  As a result of these negotiations, I understand that the Debtors' key constituency supports the Plan.

## III.      SATISFACTION OF PLAN CONFIRMATION REQUIREMENTS

6.      I have been advised by the Debtors' legal advisors and believe, based on my review of the Plan and related materials and my discussions with those advisors, that the Plan satisfies all applicable provisions of the Bankruptcy Code and should be confirmed.

### A.      The Plan Complies with Applicable Provisions of the Bankruptcy Code: Section 1129(a)(1)

#### i.      The Plan's Classification of Claims and Equity Interests Is Appropriate (Section 1122)

7.      I have been advised that section 1122 of the Bankruptcy Code permits a plan to classify various claims and equity interests into different classes, so long as all the claims and interests in a particular class are substantially similar.  It is my understanding that valid business, factual, and legal reasons exist for classifying the Claims and Equity Interests into separate Classes under the Plan and that the Claims or Equity Interests in each particular Class are substantially similar.  Similar Claims and Equity Interests have not been placed into different Classes in order to affect the outcome of the vote on the Plan.  Accordingly, I am advised and believe that the Plan satisfies section 1122 of the Bankruptcy Code.

ii.        **The Plan Satisfies the Seven Mandatory Provisions of Section 1123**

8.      I understand that section 1123(a) of the Bankruptcy Code sets forth various requirements regarding the appropriate contents of a plan. Based on my discussions with the Debtors' legal advisors, I am informed that the Plan satisfies each of these requirements.

9.      Article III of the Plan (i) designates Classes of Claims and Equity Interests, as required by section 1123(a)(1) of the Bankruptcy Code; (ii) specifies the Classes of Claims and Equity Interests that are Unimpaired under the Plan, as required by section 1123(a)(2) of the Bankruptcy Code; and (iii) specifies the treatment of each Class of Claims and Equity Interests that is Impaired, as required by section 1123(a)(3) of the Bankruptcy Code.

10.      Article III of the Plan provides for the same treatment of each Claim or Equity Interest within a Class, as required by section 1123(a)(4) of the Bankruptcy Code.

11.      Article IV of the Plan and various other provisions of the Plan and related documents set forth the means of the Plan's implementation, as required by section 1123(a)(5) of the Bankruptcy Code. Specifically, Article IV of the Plan provides for, among other things: (i) the general settlement of claims and equity interests; (ii) nonconsensual confirmation pursuant to section 1129(b) of the Bankruptcy Code with respect to Class 7 (Equity Interests in Windsor Holdings Limited); (iii) the formation of New Holdco and conveyance of all assets of Debtor Windsor Holdings Limited to New Holdco; (iv) the continued corporate existence of the Reorganized Debtors; (v) the issuance of Common Units of New Holdco; (vi) at the sole discretion of the Supporting Noteholders, the dissolution or merger of any or all of the Debtors; (vii) the payment in full, in Cash, of the unpaid reasonable fees, expenses, costs, and other charges of the Supporting Noteholders; (viii) the distribution of Cash to the Secured Notes Indenture Trustees equal to the amount of Allowed Indenture Trustee Fee Claims; (ix) the

cancellation of existing securities; and (x) the preservation of Causes of Action.  I believe that the proposed implementation steps have been carefully developed and designed to properly effect the Plan and that, as a result, the Plan provides more than adequate means for its implementation.

12.     Article IV.F.1 of the Plan provides for the issuance of Common Units in New Holdco, which will constitute voting securities.  Furthermore, the form of Operating Agreement for New Holdco filed with the Court as part of the Plan Supplement includes a prohibition against the issuance of non-voting equity securities.  Accordingly, I understand that the Plan complies with section 1123(a)(6) of the Bankruptcy Code insofar as it does not provide for, and the Operating Agreement prohibits, the issuance of non-voting equity securities.

13.     Finally, Article V.A of the Plan provides that the Supporting Noteholders and the Debtors shall select the initial board of managers of Reorganized Windsor and the other Reorganized Debtors, and the identities of such persons that are known are set forth in the Plan Supplement filed with the Court.  Thus, I understand that the Plan complies with section 1123(a)(7) of the Bankruptcy Code.

### iii.     The Discretionary Contents of the Plan Are Appropriate (Section 1123(b))

14.     I am advised that section 1123(b) of the Bankruptcy Code permits various discretionary provisions to be included in a plan.  Based on my discussions with the Debtors' legal advisors, I am informed and believe that the Plan's discretionary provisions are appropriate and satisfy this provision.  In particular, consistent with section 1123(b)(2) of the Bankruptcy Code, Article VII.A provides that the Debtors' executory contracts will be assumed under the Plan.  I understand that the Debtors have concluded, after consultation with the Debtors' advisors, that it is in the best interests of the Debtors' ongoing operations to assume their

contracts so as to continue business as normal and continue to enjoy the benefit of contractual arrangements to the greatest extent possible.

15.     Additionally, I am advised that section 1123(b)(6) of the Bankruptcy Code permits a plan to include additional terms so long as they are not inconsistent with the other provisions of the Bankruptcy Code.   Accordingly, Article X of the Plan includes various discharge, release, exculpation and injunction provisions that I am advised are typically afforded to debtors, reorganized debtors and certain third parties under a plan of reorganization.  I believe these discretionary provisions are appropriate because, among other things, they are (i) integral to the terms, conditions and settlements contained in the Plan; (ii) fair, equitable and reasonable and in the best interests of the Debtors and their estates; (iii) the product of extensive arm's length negotiations among sophisticated parties; and (iv) supported by fair consideration. Furthermore, I understand that the Voting Class has voted overwhelmingly in favor of the Plan.

16.     I believe that the Plan's release, exculpation and injunction provisions will eliminate the costs and risks of litigation and allow, among other things, the principals of the Reorganized Debtors to focus entirely on operations after emergence.  The release, exculpation and injunction provisions have been critical to obtaining the support of the Supporting Noteholders.  I submit that the release, exculpation and injunction provisions of the Plan are necessary and appropriate under the circumstances.  I have been advised that the release, exculpation, and injunction provisions of the Plan are not inconsistent with the Bankruptcy Code and, thus, I believe the requirements of section 1123(b) of the Bankruptcy Code are satisfied.

Debtor Releases

17.     I believe the Debtor Releases in Article IX.D of the Plan are appropriate for several reasons.  First, there is an identity of interest among the Debtors and many of the non-Debtor Released Parties arising out of the shared "common goal" of confirming the Plan and

implementing the Plan's consummation.  Moreover, certain of the Released Parties (such as the Debtors' directors and officers) are entitled to indemnification arising out of certain indemnity relationships.  Under these indemnity agreements, any claim asserted against a Released Party that the Debtors are obligated to indemnify would essentially be a claim against the Debtors. Therefore, any such claim, even if ultimately unsuccessful, would further deplete the Estates' finite resources.

18.      Second, I believe that the Released Parties have made important contributions to these Chapter 11 Cases, including, among other things, negotiating and formulating the Plan and agreeing to the various compromises and concessions of their legal rights necessary to achieve consensus regarding its terms.  It is my belief that without the support of the Released Parties, implementation of the terms of the Plan would have been much more difficult and the success of the process would have been much more uncertain.  At a minimum, I believe that a contested process would have required significant litigation that would have decreased value for all stakeholders and delayed the restructuring process.

19.      In addition, I believe that the Released Parties provided other specific and substantial contributions to the Chapter 11 Cases.  For instance, I understand that the Secured Noteholders consented to the Debtors' use of cash collateral, which was integral to the Debtors' ability to effectuate the terms of the Restructuring Support Agreement.  Moreover, the Debtors' officers and directors made significant efforts on behalf of the Debtors both prior to and during the Chapter 11 Cases to navigate the Debtors to this juncture.  Without the releases, I believe that many of the Released Parties would have been unwilling to contribute to the Plan process, which would have reduced the enterprise value available for distribution to creditors and would have negatively impacted the Debtors' restructuring.

01:16295018.2

20.     Third, I believe the discharges, injunctions, releases and exculpations are integral to the Plan as a whole, which will ultimately result in meaningful distributions to the Debtors' creditors.  The threat of litigation—and any litigation that ultimately came to fruition, no matter how baseless—would be a significant distraction to the Released Parties, the result of which would be the incurrence of potentially tremendous cost, time and labor, all of which would be better spent on developing the Debtors' business post-emergence.  Indeed, without the Releases, the Debtors' officers and directors would be unable to focus the appropriate attention on exercising their fiduciary duties and returning the Debtors to a profitable and successful enterprise.  Moreover, the Debtors, who have a fiduciary obligation to maximize value for their Estates, have determined after reasonable inquiry that, to the best of their knowledge, information and belief, no valid claims or causes of action exist against any of the Released Parties for which releases are being granted.

21.     Fourth, I am advised that the Debtors' creditors voted overwhelmingly to accept the Plan.

22.     Fifth, I understand that the Plan provides for distributions on account of all or substantially all of the Claims held by the Released Parties.  The Plan provides for the distribution of Common Units to holders of Secured Noteholder Claims Against Note Obligor Debtors.  In addition, the Plan provides for full payments to holders of Administrative Expense Claims, Fee Claims, Priority Tax Claims, Other Priority Claims, and Other Secured Claims.  Furthermore, to the extent holders of Allowed General Unsecured Claims have not been paid in the ordinary course of business during the Chapter 11 Cases, they will be reinstated in full, which I believe would not be possible in a liquidation.

23.     Accordingly, I believe that, under the specific facts and equities of these Chapter 11 Cases, the Debtor Releases constitute a valid exercise of the Debtors' business judgment and should be approved.

Third Party Releases

24.     Article IX.D of the Plan provides for consensual third party releases only by those holders of Claims who actually voted to accept the Plan <u>and</u> did not mark their ballots to indicate a refusal to grant such releases.  Based on my discussions with the Debtors' legal advisors, I am informed and believe such consensual releases are appropriate under applicable case law.

Exculpation

25.     Article IX.D of the Plan also provides for exculpation of the Debtors and their officers, directors and retained professionals for any acts or omissions occurring between the Petition Date and the Effective Date in connection with the Chapter 11 Cases, except any acts or omissions that constitute willful misconduct or gross negligence.  Based on my discussions with the Debtors' legal advisors, I am informed and believe that the exculpation provision is appropriate under applicable case law.

**B.      Notice and Solicitation of the Plan:  Section 1129(a)(2)**

26.     Based on my discussions with the Debtors' legal advisors, I believe that the Debtors have complied with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, as modified by the Court's order approving the Disclosure Statement [Docket No. 144] (the "**Disclosure Statement Approval Order**"), governing notice, disclosure and solicitation in connection with the Plan and the Disclosure Statement.  The affidavit of service filed reflecting compliance with the notice and solicitation requirements of the Disclosure Statement Approval Order shows that the Debtors, through their Claims and Voting Agent, have

complied with such solicitation and disclosure requirements.  I also understand that the Debtors

caused to be mailed and published notice of the Confirmation Hearing in accordance with the

Disclosure Statement Approval Order.  Accordingly, to the best of my knowledge, the Debtors

have complied with all applicable disclosure and solicitation requirements set forth in the

Bankruptcy Code and the Bankruptcy Rules, as modified by the Disclosure Statement Approval

Order.

### C.    Good Faith: Section 1129(a)(3)

27.    The Plan has been proposed in good faith, with the honest and legitimate

purposes of reorganizing the Debtors as a going concern, restructuring the Debtors' liabilities,

and preserving and maximizing the value of the Debtors' estates for the benefit of all parties in

interest.  I believe the Plan will accomplish these objectives in an efficient manner, and that it is

in no way an attempt to abuse judicial process or delay or frustrate the legitimate efforts of

creditors to enforce their rights.

28.    The Plan is the product of extensive arm's length negotiations among the

Debtors and the Supporting Noteholders.  The resulting Plan will reduce the Debtors' liabilities

and provide meaningful cash recoveries to the Debtors' creditors.  I believe that the Plan will

facilitate the rehabilitation of the Debtors' business while ensuring the greatest possible

distribution to the Debtors' stakeholders.  I am advised that the Voting Class overwhelmingly

supports the Plan, which provides independent evidence of good faith.  For these reasons, I

believe the Plan was filed in good faith to promote the rehabilitative objectives and purposes of

the Bankruptcy Code, and I am therefore advised and believe that it satisfies the requirements of

1129(a)(3) of the Bankruptcy Code.

01:16295018.2

### D.     Court Approval of Certain Payments: Section 1129(a)(4)

29.     Based on my discussions with the Debtors' legal advisors, I believe the Plan complies with section 1129(a)(4) of the Bankruptcy Code, as all payments made or to be made by the Debtors for services rendered and expenses incurred in connection with the Chapter 11 Cases prior to Confirmation, including, without limitation, all Claims for professional fees, will be paid only after allowance of such Claims by the Court to the extent not already approved and paid in accordance with orders of the Court.

### E.     Disclosure of Certain Individuals: Section 1129(a)(5)

30.     Article V.A of the Plan provides that the initial officers and managers of the New Board will be appointed by the Supporting Noteholders.  I am informed that the Supporting Noteholders intend to disclose the identity and affiliations of those Persons proposed to serve as the initial officers and Managers prior to the Effective Date.  In addition, the Debtors understand that none of the initial officers and Managers are or will be an insider of the Debtors. Accordingly, I am informed and believe that the Plan, together with the Plan Supplement, satisfy section 1129(a)(5) of the Bankruptcy Code.

### F.     Rate Changes: Section 1129(a)(6)

31.     Because the Debtors' business does not involve the establishment of rates subject to approval of any governmental regulatory commission, I understand that section 1129(a)(6) is inapplicable to these Chapter 11 Cases.

### G.     Best Interests Test:  Section 1129(a)(7)

32.     Based on the liquidation analysis prepared by the Debtors and AMA that details the recoveries to stakeholders in a hypothetical Chapter 7 liquidation of the Debtors' assets (the "**Liquidation Analysis**"), which is attached as an exhibit to the Disclosure Statement, I am advised and believe that the Plan provides for recoveries to holders of Impaired Claims that

01:16295018.2

are equal or superior to those that would be available in a liquidation of the Debtors' estates. Specifically, the Liquidation Analysis shows that the total funds available for Claims in a liquidation scenario to be $123,881,211—approximately $8.5 million less than the amount available under the Plan.

33.     Accordingly, I am advised and believe that the Plan satisfies the "best interests test" because no creditor or equity holder in those classes would receive or retain property on account of its claim or equity interest under a liquidation scenario of a value that is more than such party will receive under the Plan.

**H.     Acceptance of Impaired Classes: Section 1129(a)(8); Cramdown: Section 1129(b)**

34.     The *Declaration of Christina Pullo of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Amended Plan of Reorganization of the Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 159] (the "**Voting Declaration**") states that the Class of creditors entitled to vote on the Plan voted to accept the Plan and that Unimpaired Classes are deemed to accept in accordance with the Plan. However, I am advised that Class 7 is deemed to reject the Plan. As such, I am advised that the Plan does not meet the requirements of section 1129(a)(8) of the Plan. Nevertheless, based on my discussions with the Debtors' legal advisors, I understand that the Plan may still be confirmed because the Plan satisfies the "cram down" provisions of 1129(b) of the Bankruptcy Code.

35.     It is my understanding, based on discussions with the Debtors' legal advisors, that a plan of reorganization may be confirmed notwithstanding the deemed rejection by a class of claims or equity interests if the plan does not discriminate unfairly and is fair and equitable. It is my further understanding that (a) the "fair and equitable" requirement is satisfied if the holders of claims and equity interests in classes junior to the rejecting classes are not

01:16295018.2

receiving any property under the plan, and (b) a plan does not discriminate unfairly if the legal rights of a dissenting class are treated in a manner than is consistent with the treatment of other classes whose legal rights are substantial similar to those of that class.

36.     On the basis of my discussions with the Debtors' legal advisors, I believe that the Plan satisfies these requirements because no Claims or Equity Interests junior to the Rejecting Class are receiving any property.   Furthermore, as evidenced by the estimated recoveries set forth in the Disclosure Statement, no Class of Claims or Equity Interests, including those senior to Class 7, are receiving more than full payment on account of such senior Claims or Equity Interests.   Additionally, based on my discussions with the Debtors' legal advisors, I understand that similarly situated creditors will receive substantially similar recoveries, irrespective of their Class.   Accordingly, based on my discussions with the Debtors' legal advisors, I believe that the Plan does not unfairly discriminate with respect to Class 7, and that the cram down test of section 1129(b) of the Bankruptcy Code is satisfied.

I.     **Treatment of Priority Claims: Section 1129(a)(9)**

37.     Based on discussions with the Debtors' legal advisors, I understand that all administrative and priority claims against the Debtors will be satisfied in the manner required by section 1129(a)(9) of the Bankruptcy Code, unless such holder of a particular claim has agreed to different treatment of such claim.

J.     **Impaired Accepting Class: Section 1129(a)(10)**

38.     The Voting Declaration shows that at least one Class of Claims that is impaired under the Plan voted to accept the Plan, including votes cast by parties deemed to accept but excluding any votes cast by insiders.   Accordingly, I understand that the Plan complies with section 1129(a)(10) of the Bankruptcy Code.

01:16295018.2

13

### K.   Feasibility:  Section 1129(a)(11)

39.   Based on my knowledge of the Debtors and the terms of the Plan, I believe that the Plan is feasible.  Specifically, I believe that the Debtors' cash from operations will provide the Reorganized Debtors with sufficient cash to satisfy their obligations under the Plan and provide the Reorganized Debtors with working capital sufficient to support their ongoing business operations.  As such, I believe that Confirmation is not likely to be followed by the need for further financial reorganization or liquidation.

40.   The Debtors and their advisors have thoroughly analyzed their ability to meet their obligations under the Plan and to continue as a going concern without further financial reorganization, and have carefully negotiated and developed the various transactions and ancillary documents that will assure the successful implementation of the Plan and the Debtors' subsequent emergence.  As part of the negotiation process, the Debtors, in conjunction with AMA, prepared projections of their financial performance for fiscal years 2014 through 2018 (the "**Financial Projections**").   The Financial Projections are described in detail in the Disclosure Statement and attached as an exhibit thereto.

41.   Under the Plan and as described in the Disclosure Statement, the Debtors will have certain payment obligations due on or as soon as practicable after the Effective Date, and others in the months and years following the Effective Date.  The Financial Projections indicate that the Reorganized Debtors should have sufficient cash flow to service and pay their debt obligations, fund their operations, and make these requirement payments.  Specifically, the Debtors' emergence from the Chapter 11 Cases is predicated on funding from Cash on hand as of the Effective Date.  As demonstrated by the Financial Projections, and based on discussions with the Debtors' advisors, I believe that this funding source will provide the Debtors and

01:16295018.2

Reorganized Debtors with sufficient capital and liquidity to make required payments under the Plan and successfully operate after the Effective Date.

42.       Accordingly, I believe that the Plan meets the feasibility requirements of section 1129(a)(11) of the Bankruptcy Code.

**L.       Payment of Certain Fees:  Section 1129(a)(12)**

43.       The Plan provides that all fees required under 28 U.S.C. § 1930 will be paid on the Effective Date.  I believe the Debtors have adequate means to make such payments, and therefore the Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

**M.       Only One Plan:  Section 1129(c)**

44.       The Plan is the sole plan of reorganization that has been proposed, and thus I am advised that the requirement of section 1129(c) has been met.

**N.       Principal Purpose of the Plan:  Section 1129(d)**

45.       The Plan does not have as one of its principal purposes the avoidance of taxes or avoidance of requirements of section 5 of the Securities Act of 1933, and I am not aware of any filing by any governmental agency asserting such avoidance.  Thus, I am advised that the requirements of section 1129(d) have been met.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: November 17, 2014
      New York, New York

*Paul M. Leand, Jr.*
PAUL M. LEAND, JR.

01:16295018.2